STATE, Respondent, v. ANDERSON, Appellant.

*No. State 174. Argued May 7, 1971.—Decided June 2, 1971.*
(Also reported in 187 N. W. 2d 335.)

For the appellant there were briefs by *Maurice J. McSweeney, William P. Dixon,* and *Foley & Lardner,* all of Milwaukee, and oral argument by *Mr. Dixon.*

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on

the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *E. Michael McCann,* district attorney of Milwaukee county.

CONNOR T. HANSEN, J. On this appeal, the defendant raises two issues: (1) The trial court erred in refusing to submit a verdict for second-degree murder, and (2) a new trial should be granted in the interest of justice.

### *Submission of lesser offenses.*

The defendant's request for submission of the lesser verdicts of second-degree murder and manslaughter were denied. The defendant has appealed, alleging that the trial court erred in refusing to submit to the jury a verdict of second-degree murder.

There is little dispute in the facts as to the circumstances surrounding this homicide. On the evening of May 24, 1968, the defendant was in a tavern located in the city of Milwaukee. Aretta entered the tavern at approximately 9:30 p. m. At this time the defendant's sister, who was sitting at a table with several other persons, called to Aretta and asked her whether her husband had come to take her to her mother-in-law's funeral. The defendant, who was standing nearby, stated that Aretta's husband would never come. Aretta answered that if her own husband did not come, she would get the defendant's husband to take her. Defendant then struck Aretta, and the two started fighting. The fight was broken up; the defendant was led out the front door by her sister, and Aretta was led out the back door by the tavern operator. However, the fight resumed outside the tavern. The two women separated once, but resumed fighting again. Aretta choked the defendant and pounded her head on the sidewalk, and generally had the better part of the fight. The defendant's sister

pulled Aretta off the defendant, and the defendant stated, "Don't nobody mess with me. . . . Stay here until I go home and get my s – – –." The defendant then ran to her home a short distance away, followed by a friend named Jackie. Jackie attempted to stop the defendant but was unable to control her. The defendant returned to the tavern with a knife in her hand. There was some evidence that Jackie ran after the defendant and took the knife away from her, but that the defendant then ran home and obtained another knife. Defendant returned to the tavern where Aretta was still outside. The defendant stated, "I'll kill this bitch," and stabbed Aretta in the neck, back, chest and arms. After this the defendant stated, "I hope the bitch dies."

The defendant went into the tavern. Shortly thereafter one of her sisters returned to the tavern and found the defendant seated at a table and gave the defendant a cigarette. Defendant took the cigarette and "started sticking it into her arm, she started burning herself." The defendant then went to the pool table and started throwing pool balls and screaming.

The police arrived several minutes after the stabbing. The defendant came out of the tavern and stated several times, "I did it, I hope she dies."

An autopsy of the deceased revealed nine stab wounds, and that any one of three of the nine stab wounds could have been fatal.

To justify submitting lesser degrees of homicide than that charged in the information, there must be a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser charge. *Zebrowski v. State* (1971), 50 Wis. 2d 715, 185 N. W. 2d 545; *State v. Bergenthal* (1970), 47 Wis. 2d 668, 178 N. W. 2d 16; *Brook v. State* (1963), 21 Wis. 2d 32, 123 N. W. 2d 535; *Zenou v. State* (1958), 4 Wis. 2d 655, 91 N. W. 2d 208.

In *State v. Bergenthal, supra,* page 675, the court stated:

"The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. However, there is not to be read into the rule the requirement that 'there are not reasonable grounds on the evidence to convict of the greater offense.' [Citing to: *Commodore v. State* (1967), 33 Wis. 2d 373, 382, 147 N. W. 2d 283; cited with approval in *State v. Carter* (1969), 44 Wis. 2d 151, 156, 170 N. W. 2d 681.]"

The defendant contends that a verdict of second-degree murder should have been submitted because certain provocatory conduct on the part of the deceased negated the intent to kill. The evidence showed that in January, 1968, four months before the stabbing, the deceased had slept with the defendant's husband while the defendant was in the hospital giving birth to a child. Shortly after this, the deceased had pulled a gun on the defendant when the defendant confronted her with this fact. On another occasion, the deceased had made derogatory remarks about defendant's husband in the presence of the husband and his mother. At noon on the day of the stabbing, the defendant and the deceased had eaten lunch together, and the deceased had attempted to eat some of the defendant's food, and stated, "I had your man and I can eat your food."

The defendant contends that this evidence of provocation, together with the evidence of her actions at the time of the stabbing, showed that she acted in the heat of passion and required that the trial court submit a verdict of second-degree murder. The defendant relies

upon the following statement from *Brook v. State, supra,* page 43:

". . . One of the most-common situations in which a killing properly falls within this statutory definition of second-degree murder is where the actor kills in the heat of passion without such provocation as will reduce the offense to manslaughter. . . ."

Taking this statement out of context, it would appear that any, or at least some, provocation causing the defendant to commit a homicide "in the heat of passion," is sufficient to reduce the homicide to second-degree murder, even though the provocation is not sufficient to reduce the homicide to manslaughter. However, it is clear that this is not what the statement means. The full statement of the court in *Brook v. State, supra,* page 43, is as follows:

"Second-degree murder is defined in sec. 940.02, Stats. The state's brief asserts that second-degree murder is first-degree murder without the intent to kill. We concur. The decision of this court in *Zenou v. State, supra,* makes it clear that first-degree murder may be submitted without also submitting second-degree murder where intent to kill clearly appears beyond a reasonable doubt. One of the most-common situations in which a killing properly falls within this statutory definition of second-degree murder is where the actor kills in the heat of passion without such provocation as will reduce the offense to manslaughter. . . ."

This court has held that first- and second-degree murder are distinguished by the presence or absence of intent:

". . . First-degree murder is now defined as causing 'the death of another human being with intent to kill that person or another.' Sec. 940.01, Stats. Second-degree murder is defined causing 'the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life.' Sec. 940.02. If the actions and mental state of a defendant are found to be such as to make him guilty of first-

degree murder with the sole exception that he does not have 'the mental purpose to take the life of another human being,' he is guilty of second-degree murder. The 'depravity' referred to in the definition of second-degree murder is present as well in first-degree murder, the difference being the absence of the design to effect death. *Montgomery v. State* (1922), 178 Wis. 461, 466, 190 N. W. 105." *Zenou v. State, supra,* 667, 668.

In this case the defendant's actions clearly showed that the killing was intentional. The defendant went to her home to obtain a knife. There was some evidence that the knife was taken away by a friend, but the defendant obtained another knife. Before stabbing the deceased, the defendant expressed an intention of killing her, and after stabbing her, she stated she hoped the deceased would die. She inflicted multiple stab wounds on the deceased. "Several wounds, including the fatal one, could not have been inflicted by a mentally responsible person except with intent to kill." *Zenou v. State, supra,* 669.

We find no error in the trial court's refusal to submit to the jury a verdict for second-degree murder.

### Interest of justice.

The defendant urges that this court order a new trial in the interest of justice. The contention that a new trial is required in the interest of justice is based upon the testimony of a psychiatrist at the insanity phase of the defendant's trial. Two court-appointed psychiatrists testified that the defendant understood the nature and quality of her acts, was capable of distinguishing right from wrong, and was not insane at the time of the act. However, one of the psychiatrists testified that the defendant's controls were reduced to some extent; that she was in a situation of extreme tension; that she had been profoundly provoked; and that while the defendant was not driven into insanity, she was driven into the act.

Counsel on appeal argues that if defendant's trial counsel had elected a single trial on the issue of both guilt and insanity, rather than a sequential order of proof, such testimony would have been before the court prior to the time the verdicts were submitted to the jury and would have justified submitting a verdict covering lesser included offenses. However, the decision to elect a sequential order of proof was a matter of trial strategy. This court has held that criminal cases are not to be retried at the instance of the defendant because he is more hopeful of success on a second try. *State v. Cathey* (1966), 32 Wis. 2d 79, 145 N. W. 2d 100. Moreover, even if a new trial were ordered under the statute now in effect, a sequential order of proof is mandatory. Sec. 971.175, Stats. And such testimony of the mental condition of the defendant is not admissible on the question of intent. *Curl v. State* (1968), 40 Wis. 2d 474, 162 N. W. 2d 77; *State v. Hebard* (1971), 50 Wis. 2d 408, 184 N. W. 2d 156.

*By the Court.*—Judgment affirmed.