SPRAGUE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 41. Argued June 4, 1971.—Decided June 25, 1971.*
(Also reported in 187 N. W. 2d 784.)

For the plaintiff in error there was a brief and oral argument by *Jack J. Gimbel* of Milwaukee.

For the defendant in error the cause was argued by *Lee Edward Wells*, assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren*, attorney general, *William A. Platz*, assistant attorney general, and *E. Michael McCann*, district attorney.

CONNOR T. HANSEN, J.   We consider three issues to be raised on this appeal:

1. Did the trial court err in refusing to permit the introduction of testimony concerning the defendant's history of epilepsy, to negate intent, in the first portion of the sequential trial?

2. Did the defendant prove he was insane at the time of the offense?

3. Is the defendant entitled to a new trial in the interest of justice?

### *Intent.*

During the guilt portion of the trial, several attempts were made by counsel for the defendant to introduce testimony concerning the defendant's history of epilepsy. Objections to such testimony were sustained by the trial court.

Verdicts submitted to the jury included verdicts of first- and second-degree murder.

Counsel for the defendant contends that the attempts to introduce testimony concerning the defendant's prior history of epilepsy were for the purpose of negating the intent necessary for a finding of first-degree murder, and that it was error for the trial court to refuse to permit the introduction of this testimony in the guilt portion of the trial.

The question whether medical evidence which is material to the issue of sanity may also be introduced in the guilt portion of the trial to negate intent was considered by this court in *Curl v. State* (1968), 40 Wis. 2d 474, 162 N. W. 2d 77. In that case the defendant was tried for the offense of armed robbery. This court held that it was not error to exclude evidence of the defendant's prior mental condition in the guilt portion of the trial. The court stated:

". . . To bifurcate a trial is to separate completely the issue of lack of accountability due to insanity from the issue of whether the crime was committed. If the testimony of earlier hospitalizations and mental condition at such earlier times is also material on the issue of guilt, there would be no reason to hold split trials. All testimony as to mental condition would be in the record before the trial on insanity began. This would split the issues, but not the testimony or areas of inquiry. At the least, it would require medical witnesses to appear twice at the same trial to give identical testimony. At the most, it would destory the very reason for bifurcating the trial, to wit: separate consideration of separable issues.

". . .

". . . In the law the dividing line as to accountability or nonaccountability due to mental condition is the test of sanity, whatever the legal definition of these terms may be or come to be. The sane person is held accountable for his actions. The insane person is not. Personality disturbances or emotional disorders that fall short of insanity are not required areas of court inquiry and particularly not in that portion of a bifurcated trial

on the issue of guilt." *Curl v. State, supra,* pages 484, 486.

The defendant contends that this case should be distinguished from *Curl* because, whereas in *Curl* the issue is simply whether or not the defendant committed the act, in homicide cases there are various degrees of culpability. The defendant urges that since first- and second-degree murder are distinguished by the presence or absence of intent, the issue of intent to kill becomes critical and evidence of the defendant's prior mental condition should be admitted for the purpose of negating intent.

However, in *State v. Hebard* (1971), 50 Wis. 2d 408, 184 N. W. 2d 156, this court considered the relationship between evidence of insanity and intent in a murder case and reaffirmed the decision of *Curl v. State*. In *Hebard* the defendant was charged with first-degree murder and was found guilty and responsible for his acts. On appeal to this court, the defendant challenged the constitutionality of the sequential trial with evidence of mental condition admitted only on the issue of insanity. This court upheld the constitutionality of this procedure. In distinguishing insanity and intent, the court stated:

"The concept, as it has developed in Wisconsin, that a defendant, entering a plea of not guilty by reason of insanity, may request a two-stage trial but must expect testimony as to his mental condition to be admissible only on the issue of insanity, rests upon the separability of guilt and insanity as issues in the single trial. . . . If all, or nearly all, of the testimony . . . that is relevant on the issue of insanity, is also material on the element of intent, the basis and reason for affording an option to bifurcate the trial are gone. In fact, if testimony as to mental condition relates to both issues, there would seem no sound reason left for a plea of not guilty by reason of insanity. Proof adequate to establish insanity would be at least adequate to raise a doubt as to intent and the long standing dispute as to who is to be held

criminally responsible for wrongdoing would be replaced by disputes as to what degree of emotional or mental disorders would be sufficient to cast a doubt as to intent. What is involved is whether persons, sane by any test, are to be held unaccountable for their actions by reason of emotional problems or personality disorders with which they are perplexed. . . .

". . . In *Curl,* we expressly disavowed and rejected '. . . the suggestion that the personality dysfunction or dyscontrol, short of psychosis or insanity, is a relevant factor in the determination of guilty. . . .' In accepting the establishment of insanity as the measuring stick for accountability for one's action, this court declined the invitation to permit the sociopath or emotionally disturbed individual, legally sane by the applicable test, to escape being held accountable for criminal acts by pleading or establishing an impairment of the capacity to form intent, except on the issue of insanity and in the insanity phase of the trial where the trial is bifurcated. . . ." *State v. Hebard, supra,* pages 417–421.

The defendant contends that this case should be distinguished from *Hebard* because in *Hebard* the defendant denied having committed murder, while in this case the defendant did not deny the murder, but the sole defense at the guilt portion of the trial was that the defendant did not have the intent necessary for first-degree murder. The defendant argues that while a verdict of second-degree murder was submitted to the jury, the state had the benefit of a presumption that the defendant intended the natural and probable consequences of his act, and the defendant was denied opportunity of presenting evidence to negate intent by the refusal of the court to permit the introduction of evidence concerning his mental condition.

The defense as to both intent and sanity in this case was that the defendant had a psychomotor epileptic seizure at the time of the murder. The issue, whether the defendant had such a seizure at the time of the offense, was adequately presented in the second portion

of the trial. The jury, by finding that the defendant was sane, did not accept defense testimony that the defendant had a seizure at the time of the offense.

## Insanity.

The defendant elected the ALI definition of insanity and thereby assumed the burden of proving that he was not sane at the time of the offense, to a reasonable certainty by the greater weight of the credible evidence. *State v. Shoffner* (1966), 31 Wis. 2d 412, 143 N. W. 2d 458. The defendant's evidence was directed at proving that he had a psychomotor epileptic seizure at the time of the offense.

The testimony was undisputed that the defendant had a history of epilepsy with grand mal seizures. Electroencephalograms of the defendant were abnormal, showing focal lesions in the frontal and temporal lobes of the brain. There was also testimony that focal lesions in the temporal lobe are indicative of psychomotor epilepsy.

Dr. Bernard Schaeffer, who had examined the defendant in 1965, testified that the defendant's medical history and electroencephalograms were suggestive of grand mal and psychomotor seizures. He also testified that during a psychomotor seizure there may be a loss of consciousness, and that the person is usually not aware of what he is doing. He testified also that a psychomotor seizure may last a few minutes to a few hours, and very rarely may last longer than a day. He stated that emotional upsets, such as anger, fear or shock, may precipitate a psychomotor seizure; that seeing his wife fall down the stairs could have precipitated a psychomotor seizure in the defendant; and that the defendant could have murdered his wife, called several persons, driven an automobile and been chased by the police, while experiencing a psychomotor seizure. He testified

that after such a seizure, the person does not usually remember what happened.

Dr. James Hurley also testified concerning the defendant's history of epilepsy. He stated that a person could commit a criminal act while experiencing a psychomotor seizure, would not be aware of what he was doing, and afterward would not recall what he had done. Dr. Hurley also testified to a reasonable degree of medical certainty that based on his examination of the defendant, the defendant's medical history and his testimony at trial, the defendant suffered a psychomotor seizure at the time his wife fell down the stairs. He also testified, however, that if the defendant's testimony at the trial as to what he remembered and what he didn't remember was not truthful, it was his opinion that the defendant did not suffer a psychomotor seizure at the time of the offense.

However, two court-appointed psychiatrists testified that the defendant was sane at the time of the offense, and that he did not lack the substantial capacity to either appreciate the criminality of his conduct or to conform his conduct to the requirements of law. One of the court-appointed psychiatrists testified that it was his opinion that a psychomotor seizure was not precipitated when the defendant saw his wife fall down the stairs, and that the defendant did not have a psychomotor seizure.

This court has held that it is the responsibility of the trier of fact to determine the weight and credibility of medical testimony on the issue of insanity and to determine whether the defendant has met the burden of proving he was insane. *State v. Bergenthal* (1970), 47 Wis. 2d 668, 178 N. W. 2d 16. Where there is sufficient credible evidence to support the finding of the jury, it will not be upset on appeal. *McCool v. State* (1971), 51 Wis. 2d 528, 187 N. W. 2d 206. In this case there was sufficient credible evidence to support the finding of the jury.

It is also suggested that psychomotor epilepsy, or other pathological conditions of impaired consciousness, should

be considered as constituting a defense under the principle requiring that an act be voluntary in order to be criminal.

A psychomotor seizure may also fit the definition of insanity. Under the ALI definition of insanity adopted in Wisconsin, a person experiencing a psychomotor seizure could be considered to be substantially incapable of either appreciating the criminality of his conduct or of conforming his conduct to the requirements of law. A further question, however, is whether psychomotor epilepsy may legally be considered a mental disease or defect. The term "mental disease or defect" is not defined in the Model Penal Code. While medically, psychomotor epilepsy may be considered physical rather than mental in origin, the disease is one which, during the period of a seizure, affects the mental processes of the person afflicted. Thus it may be legally classified as a mental disease or defect for the purpose of determining criminal responsibility.

In this case, it is clear that psychomotor epilepsy was treated at the trial as an insanity defense, and that the defense of insanity was based solely on the theory that the defendant had a psychomotor seizure at the time of the offense. The jury, by finding the defendant sane after appropriate instructions on insanity, found that the defendant did not suffer a psychomotor seizure at the time of the offense.

The defendant further contends that a new trial should be granted in the interest of justice, pursuant to sec. 251.09, Stats. We do not agree. From our examination of the record in this case, we are not convinced that there has been a probable miscarriage of justice or that a retrial would produce a different result. The deceased was brutally beaten and a well-prepared and professional case was presented during the insanity phase of the trial.

*By the Court.*—Judgment and order affirmed.