HUGHES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 179. Argued April 10, 1975.—Decided April 21, 1975.*
(Also reported in 227 N. W. 2d 911.)

160

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. Three issues are presented for review.

1. Was it error for the trial court to refuse to admit the testimony of a psychiatrist that an abnormal mental condition prevented the defendant from forming the specific intent to kill?

2. Was it prejudicial error for the trial court to refuse to modify the standard jury instruction on the meaning of "depraved mind?"

3. Was the imposition of consecutive life sentences for the two counts of first-degree murder an abuse of discretion by the trial court?

*Psychiatrist's testimony on intent.*

Following the close of its case, the state made a motion to limit and prohibit the defense from introducing testimony from Dr. Kevin Kennedy, a psychiatrist, on an abnormal mental condition preventing the defendant from forming the specific intent to kill. Defense counsel made an offer of proof, stating:

"If Dr. Kevin Kennedy were called as a witness, the defense would offer that upon being asked the question as to whether or not, based on his conversations with the defendant—reviewing all of the personal interviews, court transcripts, jury instructions, and other legal documents, and also being familiar with the laws dealing both with insanity and as to lesser degrees of homicide—he would testify that Jeffrey Hughes, on February 25, 1973, in the early morning hours at the Gross home, would have been unable to form the specific intent to take the lives of either Jacqueline Hughes or Louis Kasprzak; and further, he would testify that at the time, he was suffering from a depraved mind and that he was, in forensic psychiatry, termed an antisocial personality or a psychopath, and that an abnormal mental condition prevented him from forming the specific intent to kill."

Here, the defendant urges that it was error for the trial court to refuse to admit the psychiatrist's testimony as to defendant's intent. It is argued that such testimony is relevant evidence to rebut the presumption that a person intends the natural and probable consequences of his acts and is, therefore, relevant because specific intent to kill is an element of the offense of first-degree murder under sec. 940.01, Stats.

Defendant's position was expressly disavowed in *Curl v. State* (1968), 40 Wis. 2d 474, 162 N. W. 2d 77, certiorari denied, 394 U. S. 1004, 89 Sup. Ct. 1601, 22 L. Ed. 2d 781. There the defendant demanded and received a bifur-

cated trial and attempted to offer evidence that he had been earlier treated at mental hospitals at the guilt portion of his trial. In agreeing with the trial court that such evidence was not material on the issues of intoxication and intent, this court said:

"Actually, what defense counsel appears to be contending is that, even if not insane and even if accountable for his actions, under the law a person by reason of a personality disorder, may be more prone to become intoxicated or less able to form an intent to commit a crime. He cites an 1898 decision in this court,[1] stressing the terms 'abnormal mental condition' and 'disordered mental condition however produced,' as requiring trial courts to establish and consider the psychopathology of legally sane persons in determining the fact of intoxication or the fact of intent. . . . If there can be found in the 1898 decision the suggestion that the personality dysfunction or dyscontrol, short of psychosis or insanity, is a relevant factor in the determination of guilt, we expressly disavow it. . . . Judge and jury ought not be required to identify, classify and evaluate all categories and classifications of human behavior beyond the establishing of the fact of sanity." (40 Wis. 2d at 484, 485)

The decision in *Curl v. State, supra,* was followed in *State v. Hebard* (1971), 50 Wis. 2d 408, 420, 421, 184 N. W. 2d 156, where this court stated:

"In accepting the establishment of insanity as the measuring stick for accountability for one's action, this court declined the invitation to permit the sociopath or emotionally disturbed individual, legally sane by the applicable test, to escape being held accountable for criminal acts by pleading or establishing an impairment of the capacity to form intent, except on the issue of insanity and in the insanity phase of the trial where the trial is bifurcated. . . ."

In *State v. Anderson* (1971), 51 Wis. 2d 557, 564, 187 N. W. 2d 335, this court noted that a sequential order of

---

[1] *Hempton v. State* (1901), 111 Wis. 127, 86 N. W. 596.

proof is mandatory under sec. 971.175, Stats., and that testimony of the mental condition of the defendant is not admissible on the question of intent.

In *Muench v. State* (1973), 60 Wis. 2d 386, 210 N. W. 2d 716, the defendant entered a single plea of not guilty, after being committed to Central State Hospital and found competent to proceed to trial. One of the arguments made before this court was that it was error for the trial court to sustain an objection to a psychiatrist's testimony as to the question of intent. An offer of proof was made that the psychiatrist would testify that the defendant had been diagnosed as an inadequate personality. This argument was rejected by this court.

"If a person is to be found incapable of forming the necessary criminal intent because of mental disease or deficiency such defense must be pursued by a plea of not guilty because of mental disease or deficiency and established in a bifurcated trial." (60 Wis. 2d at 395)

The defendant in this case withdrew his plea of not guilty because of mental disease or deficiency. Under the recent decisions of this court by doing so he was not entitled to present testimony as to his mental condition on the issue of his intent at the time of the shooting. Therefore, it was not error for the trial court to refuse to permit the testimony of the psychiatrist.

*Jury instruction.*

Error is claimed in the trial court's refusal to give requested additions to the standard jury instruction on what constitutes a "depraved mind" as an element of second-degree murder under sec. 940.02, Stats. The court instructed the jury in this regard as follows:

"The second element of this offense requires that the defendant's conduct was of such a character that it evinced a 'depraved mind regardless of human life.' 'Depraved mind regardless of human life' does not mean that the mind of the defendant must have been diseased or that he must have had a mental disorder generally de-

scribed as insanity or feeblemindedness. The depravity of mind referred to in second-degree murder exists when the conduct causing death demonstrates an utter lack of concern for the life and safety of another and for which conduct there is no justification or excuse.

"You will observe that the difference between murder in the first degree and murder in the second degree, as herein defined, consists in this: in murder in the first degree, it is the killing of a human being with an intent, that is, a mental purpose to kill, while in murder in the second degree, it is not necessary that there be an intent to cause the death of the person killed, or of any human being, but it is sufficient if such death is caused by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life."

The defendant requested, in writing, that the instruction be modified to incorporate the definition of "depraved mind" given by this court in *State v. Weso* (1973), 60 Wis. 2d 404, 409, 412, 210 N. W. 2d 442.

In that case, the element of a "depraved mind" was fully discussed. It was noted that a depraved mind must be indifferent to the life of others and that mere negligence or recklessness alone is not sufficient. (60 Wis. 2d at 410)

"To constitute a depraved mind, more than a high degree of negligence or recklessness must exist. The mind must not only disregard the safety of another but be devoid of regard for the life of another. . . . Certainly a depraved mind is not the normal state of mind of a reasonable person. A depraved mind lacks a moral sense, an appreciation of life, is unreasonable and lacks judgment. A depraved mind has a general intent to do the acts and the consciousness of the nature of the acts and possible result but lacks the specific intent to do this harm." (60 Wis. 2d at 411, 412)

Based on this case, the defendant submitted the following two amendments to the standard instruction. The first is:

". . . To constitute a depraved mind, more than a high degree of negligence or recklessness must exist.

The mind must not only disregard the safety of another, but be devoid of regard for the life of another. The element of disregard for life, likewise calls for a state of mind which has no regard for the moral or social duties of a human being. A depraved mind has a general intent to do the acts and the consciousness of the nature of the acts and possible result but lacks the specific intent to do the harm, in this case, to cause death. . . ."

The second requested amendment is:

". . . While a depraved mind may co-exist with a pre-meditated design and while it may be characterized as a mind which may be inflamed by passion to such a degree that it ceases to care for human life and safety, it is to be distinguished from the mental state required in first degree murder in that a depraved mind has a general intent to do the acts and it has a consciousness of the nature of the acts and the possible results, but it lacks the specific intent to take life."

The defendant asserts that the trial court's refusal to give either of these requested amendments to the standard instruction was an abuse of discretion. We do not agree. *Weso* does not purport to make any change in the law with respect to the element of a "depraved mind" as found in various criminal statutes. *Weso* did not hold that the present standard instruction on second-degree murder, particularly that part of the instruction regarding a "depraved mind," was either unclear or inadequate.

Even if there were merit to defendant's contention that the trial court abused its discretion in refusing to give the proposed amendments to the standard instruction there would still be no basis for reversal of the judgment of conviction. Sec. 274.37, Stats., provides, in part, as follows:

"No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury . . . unless in the opinion of the court to which application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has

affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

The instruction given informed the jury that a "depraved mind" involves an utter lack of concern for the life and safety of another for which there is no justification or excuse and that the difference between first- and second-degree murder is that first-degree murder involves intent to kill and second-degree murder does not involve this element. Under the circumstances there is no showing that the error complained of has affected the substantial rights of the defendant.

*Sentencing.*

The defendant was sentenced to two consecutive life terms and argues that the imposition of the sentences consecutively was an abuse of discretion.

Under sec. 940.01, Stats., a life sentence is mandatory where a defendant is found guilty of first-degree murder. Sec. 973.15 (1), Stats., allows for the imposition of consecutive sentences:

". . . The court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent or that it shall commence at the expiration of any other sentence."

Because the defendant was convicted of two counts of first-degree murder, the question is whether the trial court abused its discretion in making the two sentences consecutive. *See: State v. Dean* (1975), 67 Wis. 2d 513, 227 N. W. 2d 712.

Defendant's counsel here notes that:

"A person convicted of first-degree murder is eligible for parole in approximately twelve years. Thus by imposing consecutive sentences the circuit court has precluded this defendant from even being considered for parole until almost the year 2000."

A similar point was raised and dismissed by this court in *State v. Wells* (1971), 51 Wis. 2d 477, 488, 187 N. W. 2d 328, certiorari denied, 406 U. S. 907, 92 Sup. Ct. 1614, 31 L. Ed. 2d 817, where defendant was sentenced to an indeterminate term of not more than thirty years on an armed robbery charge and a consecutive life sentence for first-degree murder.

The defendant also contends that this was one criminal episode and therefore, consecutive sentences are inappropriate. This argument was recently rejected in *Ruff v. State* (1974), 65 Wis. 2d 713, 727, 728, 223 N. W. 2d 446.

". . . Defendant contends that the trial court erred in imposing consecutive sentences because the three crimes involved were part of the same 'criminal episode.' The reference to a single 'episode' comes from guidelines for the exercise of the sentencing power, not adopted in this state, but, even in a comment to the American Bar Association suggested standards, we find the reference to a 'criminal episode' to relate to the situation where a defendant is charged with multiple crimes for just one act, and not to where different acts have resulted in multiple charges, one for each act. Defendant's contention that he is being punished three times for carrying a weapon on the night in question will not hold water. . . ."

Here, the defendant was charged with the independent acts of killing his wife, Jacqueline Hughes, and Louis Kasprzak.

It is also argued that the defendant's prior record and the nature of the crimes do not justify the imposition of consecutive sentences. This court is reluctant to interfere with the trial court's area of discretion as to sentencing. *State v. Wells, supra.* Consecutive sentences were imposed in *Tucker v. State* (1973), 56 Wis. 2d 728, 738, 202 N. W. 2d 897, where this court said:

"Factors relevant to the appropriateness of the sentence imposed clearly include: the gravity or seriousness of the offense, the nature of the conduct involved, and the consequential injuries inflicted upon another person."

The protection of the public is also an appropriate consideration, *Moore v. State* (1972), 55 Wis. 2d 1, 197 N. W. 2d 820, as is the viciousness or aggravated nature of the crime. *State v. Tew* (1972), 54 Wis. 2d 361, 195 N. W. 2d 615.

In determining the appropriate sentence in this case and in explaining its reasons for imposing the consecutive sentences it did, the trial court did review the factors stated in the above-cited authorities. The trial court concluded that "the defendant does show an exceptional risk to the public" and, therefore, imposed consecutive sentences.

We conclude that there was no abuse of discretion in making the sentences consecutive. The nature and character of the crime demonstrated that the defendant was an exceptional risk to the public. The killings were an extreme over reaction to a slight provocation.

*By the Court.*—Judgment and orders affirmed.