SCHIMMEL, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–320–CR. Argued April 6, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 271.)

288

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. Two issues are raised on review:

1. Whether the defendant's statements were inadmissible at trial because they were obtained in violation of his constitutional rights; and

2. Whether psychiatric testimony is admissible in the guilt phase of a bifurcated trial for first degree murder?

*Admissibility of Defendant's Statements*

This issue concerns the defendant's statements to Dennis Sutton, the employee of the Division of Corrections, and to the Green Bay police officers on the night of July 9 and 10, 1975. With the exception of his initial comment to Sutton, that he "had murdered a girl and attempted to rape her," the defendant contends his statements were obtained in violation of his constitutional rights as set forth in *Miranda v. Arizona,* 384 U.S. 436 (1966). He contends that the statement to Sutton was made under circumstances which required a *Miranda* warning and waiver, and further contends that because Sutton failed to advise him of his rights, the defendant's later statement to the police was inadmissible as "fruits of the poisonous tree."

During the evidentiary hearing, Sutton testified as to what happened after he informed the defendant that his failure to participate in the treatment program might necessitate his return to the reformatory:

"A. I left Mr Schimmel with a statement saying that I would be there for another half hour to twenty minutes if he wanted to talk to me about my concerns about the program or I would be there tomorrow to talk with him also. Approximately twenty minutes after that Randy

came to my office. I was outside the office and he asked me if he could talk to me and I said yes and I went into my office and Randy asked me if he could shut the door. At that point we sat for a few minutes and I was asking questions to find out where he was coming from, nothing really pertinent to what subsequently came later, and Randy stated to me that he didn't know if he could talk to anybody that night or talk to anybody at all about what he had to say to me, and I prodded Randy for a couple of minutes with questions again and Randy indicated to me that he had murdered a girl and attempted to rape her, and that essentially took me by surprise having no knowledge of anything like that in his past. I pursued some questions to try to find out when, where, and how it happened, and he indicated that it happened approximately three years ago in Green Bay.

"Q. Let me stop you there, Mr. Sutton. Did Mr. Schimmel give you an account of what happened about three years before in Green Bay?

"A. A very vague account.

"Q. Did he describe what he had done to you?

"A. Not from the first statement, no. I had to ask questions and then he began freely talking about that event to the best of his recollection three years ago.

"Q. In his discussion with you did he discuss facts surrounding the event; what he did before and what he did after?

"A. He did. I tried to find out exactly what happened that day or that evening of this event allegedly took place and he indicated that he had come home from work that afternoon or that evening and his wife had accused him of drinking and he said he had not and an argument ensued and Randy left and went to a tavern for a while. He could give no time for any of this. He stayed at that tavern for a while and then went to another one and then returned home to talk to his wife and apparently an argument ensued again and he left and went to a bar down the road from his home. At that point he stayed there for a while. He could give no time reference again and he decided to go have a pizza, and he went to, I believe, the Pizza Hut and was going to order a pizza. He got into an argument or hassle with the waitress on duty there and subsequently indicated that he went there with the intent to rape her and then in fact did stab her."

■

Under *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. at 444. The defendant here argues that the statement to Sutton was taken while he was in custody, that Sutton, as an employee of the Division of Corrections, is the kind of person upon whom *Miranda* imposes the duty to inform the defendant of his rights, and that the defendant's statement to Sutton was not volunteered.

■

There can be no question that the defendant was in custody at the time he made the statement to Sutton. In *Miranda*, the court stated that the defendant's privilege of self-incrimination must be safeguarded "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subject to questioning. . . ." 384 U.S. at 478. Relying on this language, the Court, in the later case of *Mathis v. United States*, 391 U.S. 1 (1968), held that a defendant who was incarcerated on an unrelated state conviction was in custody for the purpose of applying the *Miranda* rule to an interrogation conducted by a federal revenue agent.

"The Government also seeks to narrow the scope of the *Miranda* holding by making it applicable only to questioning one who is 'in custody' in connection with the very case under investigation. There is no substance to such a distinction, and in effect it goes against the whole purpose of the *Miranda* decision which was designed to give meaningful protection to Fifth Amendment rights. We find nothing in the *Miranda* opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason

why the person is in custody." *Mathis v. United States*, 391 U.S. at 4–5.

The state apparently concedes that the defendant was in custody at the time he made his statement to Sutton, but contends that because the statement did not stem from an "interrogation" of the defendant by "law enforcement officials," the *Miranda* warnings were not required.

Soon after *Miranda* this court observed:

"As is clearly stated in *Miranda*, however, custody alone does not invoke the *Miranda* rule. *Miranda* holds that a statement that is volunteered and not elicited as a result of prior interrogation is free from the strictures of *Miranda* even if made while in custody." *Roney v. State*, 44 Wis.2d 522, 531–32, 171 N.W.2d 400 (1969).

In *Roney*, the defendant was sitting in a parked automobile when he was approached by police officers. The officers asked the defendant for identification. His answer was apparently unsatisfactory for the officers then checked with their headquarters to see in whose name the car was licensed. When they were given the name of the recorded license holder, they again asked the defendant for identification. The defendant responded, "I stole this car," after which he was arrested. The court, convinced that this series of events was not the type of in-custody interrogation proscribed by *Miranda*, concluded that the defendant's statement was spontaneous "and was not in response to any interrogation that would lead the defendant to conclude that he was the subject of an accusatory procedure." *Roney v. State, supra* at 532.

In later cases, this court has treated the question of whether a statement was given under circumstances which would invoke the safeguards required by *Miranda* as one of fact. In *Strait v. State*, 41 Wis.2d 552, 164 N.W.

2d 505 (1969), the defendant was found huddling behind a sheet of plywood in the basement of a restaurant which had been broken into. The defendant was handcuffed and taken to the police station in a squad car. En route to the station, the officers advised the defendant that he did not have to make a statement and that anything he did say could be used against him in court. The defendant then volunteered inculpatory statements. On appeal, the court only briefly addressed the defendant's contention that the statements were inadmissible at trial because of the officers' failure to advise him of his constitutional rights in accordance with *Miranda:* "The trial court found the statements were volunteered and not in response to any interrogation by the police officers. Statements volunteered under the circumstances here are not within the prohibition of *Miranda." Strait v. State, supra* at 563–64.

In *Mikulovsky v. State,* 54 Wis.2d 699, 196 N.W.2d 748 (1972), the defendant argued that his confession of the murder of both of his parents was not admissible at trial because he had not been advised of his rights. There, the defendant's confession was the result of a three-day police investigation into the whereabouts of his parents. On the first day, the police interviewed the defendant at his home and his brother at the police station. On the second day, the police again interviewed the defendant and his brother and sister at their home. On the third day, the officers asked the defendant and his brother to come to the police station for further interviewing. They were specifically advised that they did not have to come and that they could leave at any time. The defendant and his brother accompanied the officers to the station and were interviewed by various officers thoughout the morning. After lunch, a detective suggested to the defendant that they pray for the welfare of their parents, whereupon the defendant stated he killed them. The defendant

was arrested and advised of his constitutional rights for the first time.

In considering the defendant's argument that this statement was inadmissible, the court concentrated its attention primarily on the question of whether the defendant was in custody. Nevertheless, we also stated:

"In *Miranda,* the court abandoned the test of whether or not an investigation has focused on an accused and adopted the test of whether or not at the time of questioning an individual was in custody regardless of the reason for custody, *United States v. Bekowies* (9th Cir. 1970), 432 Fed.2d 8; *Mathis v. United States* (1968), 391 U.S. 1, 88 Sup. Ct. 1503, 20 L. Ed.2d 381, and regardless of where custody occurs. *Orozco v. Texas* (1969), 394 U.S. 324, 89 Sup. Ct. 1095, 22 L. Ed.2d 311. However, *Miranda* only prohibits the type of interrogation which is designed to either directly or indirectly elicit incriminating statements, absent the giving of prior warnings. *In this regard, whether an individual has been accused of a crime and whether the police officers know or have reason to believe that a crime has been committed, are facts relevant to determining the absence or presence of 'custodial interrogation.'* Roney v. State, supra, pages 530, 531. In the instant case there was no evidence or implication that a crime had been committed or that the defendant was involved. *The findings of the trial court that defendant was not under custodial interrogation are not against the great weight and clear preponderance of the evidence."* Mikulovsky v. State, supra at 719–20. (Emphasis supplied.)

We think that the trial court's determination that the defendant's statement to Mr. Sutton was not the result of an interrogation so as to invoke the rule of *Miranda* is a factual determination which should not be reversed unless it is contrary to the great weight and clear preponderance of the evidence. *See also, McClellan v. State,* 53 Wis.2d 724, 193 N.W.2d 711 (1972) ; *Flowers v. State,*

43 Wis.2d 352, 168 N.W.2d 843 (1969). Furthermore, we conclude that under the circumstances of this case, the trial court's finding that the defendant's statement was freely and voluntarily given is not against the great weight and clear preponderance of the evidence.

*Psychiatric Evidence and the Bifurcated Trial*

The defendant was tried on pleas of not guilty and not guilty by reason of insanity. A bifurcated trial was held in conformity with sec. 971.175, Stats. During the first, or "guilt," phase of the trial, the defendant sought to introduce the testimony of Dr. Ralph Baker relative to the defendant's mental state at the time of the crime. The court excluded the testimony but allowed the defendant to make a testimonial offer of proof. On this appeal, the defendant argues that psychiatric testimony going to the defendant's mental capacity at the time of the crime is admissible in the guilt phase of a first degree murder prosecution.

At the outset, it must be noted that the trial court's exclusion of this evidence was in accordance with the long-standing rule in Wisconsin. This court has consistently held that such psychiatric evidence is not admissible during this phase of a bifurcated trial. *Hughes v. State,* 68 Wis.2d 159, 227 N.W.2d 911 (1975); *Muench v. State,* 60 Wis.2d 386, 210 N.W.2d 716 (1973); *Sprague v. State,* 52 Wis.2d 89, 187 N.W.2d 784 (1971); *State v. Anderson,* 51 Wis.2d 557, 187 N.W.2d 335 (1971); *State v. Hebard,* 50 Wis.2d 408, 184 N.W.2d 156 (1971); *Curl v. State,* 40 Wis.2d 474, 162 N.W.2d 71 (1968).

In addition to citing numerous cases of other jurisdictions to argue that Wisconsin remains the only state to exclude such evidence in the guilt phase of a bifurcated prosecution of this type, the defendant asserts that other, more recent decisions place in doubt the continued validity of the Wisconsin prohibition.

The disposition of this case was delayed pending the decision in the appeal from one of these cases, *Hughes v. Matthews*, 440 F. Supp. 1272 (E.D. Wis. 1977).

The defendant Hughes was charged with two counts of first degree murder. He originally pleaded not guilty and not guilty by reason of mental disease or defect, but prior to trial he withdrew the latter plea and proceeded on the not guilty plea alone. At trial, the defendant based his defense on the theory that he lacked the requisite specific intent for first degree murder and was guilty only of second degree murder. At the close of the state's case, Hughes attempted to call a psychiatrist to testify regarding his mental state at the time of the act. When the trial court excluded this testimony, the defendant made an offer of proof to the effect that the psychiatrist would have testified that, at the time of the act, the defendant was suffering from a depraved mind and that an abnormal mental condition prevented Hughes from forming the specific intent to kill. The defense offered no other evidence. The jury, after being given instructions including one regarding the legal presumption of intent, found Hughes guilty on both counts.

In a direct appeal to this court, we rejected Hughes' argument that since specific intent is an element of first degree murder, psychiatric evidence must be admitted to enable a defendant to rebut the legal presumption that a person intends the natural and probable consequences of his acts. *Hughes v. State*, 68 Wis.2d at 163–65.

Hughes then brought a habeas corpus action in the District Court for the Eastern District of Wisconsin, and in *Hughes v. Matthews, supra,* the district court ruled that the exclusion of psychiatric testimony, coupled with the presumption that the defendant intended the consequences of his acts, unconstitutionally relieved the prosecution of its responsibility to prove one of the crucial elements of first degree murder.

On May 12, 1978, the Seventh Circuit Court of Appeals affirmed the district court. *Hughes v. Matthews,* 576 F.2d 1250 (1978). The circuit court's analysis in affirming the district court may be divided into two parts. In the first part, the court addressed the effect of the combination of the standard criminal presumption of intent with the rule excluding psychiatric testimony. The court initially noted that in Wisconsin, the crimes of first and second degree murder are distinguished only by the degree of intent required for conviction. *Compare,* sec. 940.01, Stats., and *Holmes v. State,* 63 Wis.2d 389, 399, 217 N.W. 2d 657 (1974) (first degree murder requires a specific intent to kill), *with* sec. 940.02, Stats., *and Wagner v. State,* 76 Wis.2d 39, 48, 250 N.W.2d 331 (1977) (second degree murder does not require the existence of any particular state of mind). The court also noted that in Wisconsin, there is a rebuttable presumption of intent: "[t]he law presumes a person intends the natural and probable consequences of his own acts but the presumption may be rebutted." *State v. Carlson,* 5 Wis.2d 595, 604, 93 N.W.2d 354 (1958).

However, the court reasoned, by combining the criminal presumption of intent with the rule excluding psychiatric testimony relating to the accused's state of mind, the presumption was promoted from the status of being rebuttable to the status of being conclusive. Because the Supreme Court has held that all the elements of a crime must be proven by the prosecution beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 364 (1970), and that a presumption which relieves the state of this burden of proof is unconstitutional, *Morrisetta v. United States,* 342 U.S. 246, 275 (1952), the court concluded, "Thus the district court was correct in holding that by instructing the jury to presume intent if not rebutted, and by excluding psychiatric evidence offered to rebut the presumption,

Wisconsin set up a conclusive presumption which unconstitutionally relieved the prosecution of the burden of proving the element of specific intent beyond a reasonable doubt." *Hughes v. Matthews,* 576 F.2d at 1255. It should be noted that the circuit court did not condemn the presumption of intent itself, but only its combination with the rule excluding rebutting psychiatric testimony.

In the second part of the opinion, the court concluded that the exclusionary rule itself was constitutionally defective. Noting that the Supreme Court has held that the right of a defendant to present evidence is a right which has independent status under the Sixth and Fourteenth Amendments, *In re Winship, supra; Chambers v. Mississippi,* 410 U.S. 284 (1973), the court stated, "A defendant's right to present evidence is violated where 'the State has recognized as relevant and competent the testimony of this type of witness, but has arbitrarily barred its use by the defendant.' " *Hughes v. Matthews,* 576 F.2d at 1256, quoting, *Washington v. Texas,* 388 U.S. 14, 25 (1967) (Harland, J., concurring).

The circuit court, looking to Wisconsin case law, thereupon concluded that this type of evidence was relevant because "psychiatric evidence which does not prove insanity might raise a reasonable doubt as to whether a defendant did or could form specific as opposed to general intent," *Hughes v. Matthews,* at 1257, and that it is "generally considered competent evidence in Wisconsin." *Hughes v. Matthews,* at 1258.

The state offered two justifications for the exclusionary rule, but the court found both without merit. The court dismissed the first justification—that the admission of this type of testimony would absolve "guilty" persons for mental abnormalities not amounting to insanity—on the grounds that psychiatric testimony offered by a defendant who is charged with first degree murder does not absolve him of guilt but merely tends to prove

that a conviction of second degree murder is more appropriate. The court, limiting itself to the particular circumstances at bar, dismissed the second justification— that the exclusion insures the integrity of Wisconsin's bifurcated trial system—on the grounds that Hughes was tried only on a not guilty plea. *Hughes v. Matthews, supra.*

Thus, the circuit court found the exclusionary rule unconstitutional as applied to a first degree murder prosecution to which the defendant has pleaded not guilty. But in doing so, the court made certain qualifications which are important. First, the court held that a defendant has a constitutional right to introduce only that psychiatric testimony which is relevant to the issues and which is competent. *See Hughes v. Matthews,* at 1253, n. 5, 1256, n. 13. Second, the court stated that it did not mean to fashion a new "diminished responsibility" defense for emotional problems not amounting to mental disease or defect; rather, it stated that a defendant must be able to introduce evidence which might disprove an element of a crime for which the burden of proof is on the state.

We conclude that the circuit court's analysis in *Hughes* applies to the case now before this court, and requires the admission of competent psychiatric testimony during the guilt phase of a bifurcated trial relevant to the defendant's state of mind at the time of the crime. Previous decisions of this court are overruled insofar as they are inconsistent with our holding today.

The exclusion of psychiatric evidence in this case was not harmless error under the test set forth in *Wold v. State,* 57 Wis.2d 344, 356, 204 N.W.2d 482 (1973). In an offer of proof, the defendant's psychiatrist stated that it was his opinion that the defendant was not then capable of forming the intent to take the life of another. There-

fore, this case must be reversed and remanded for a new trial on the question of guilt of first degree murder.

*By the Court.*—Judgment reversed and cause remanded for a new trial on the issue of guilt of first degree murder.