**Richard A. STEELE, Petitioner,**

v.

**Thomas ISRAEL and the Attorney General of the State of Wisconsin, Respondents.**

No. 81-C-746.

United States District Court, E.D. Wisconsin.

Oct. 3, 1983.

1209

Ruth S. Downs, Asst. State Public Defender, Madison, Wis., for petitioner.

Mary V. Bowman, Asst. Atty. Gen., Madison, Wis., for respondents.

## ORDER

WARREN, District Judge.

Petitioner Richard A. Steele has filed a petition for a writ of habeas corpus. He was convicted of first degree murder on July 22, 1974, and received the statutorily mandated life sentence. He asserts three grounds in support of his petition: (1) that he was denied his constitutional due process right to present a defense when the trial court excluded expert psychiatric testimony on the question of intent; (2) that the presumption of intent jury instruction given by the trial court violated his constitutional right to have a jury decide each factual issue beyond a reasonable doubt, and that it violated his due process right to have the prosecution carry the burden of proof beyond a reasonable doubt as to each factual issue; and (3) that he was deprived of due process when the trial court refused to instruct the jury on the lesser-included offense of second degree murder.

I.

This Court has delayed action on this petition while awaiting the Seventh Circuit's decision in *Muench v. Israel,* 715 F.2d 1124 (7th Cir.1983). *Muench* also deals with the propriety of Wisconsin's exclusion of psychiatric expert testimony on the question of intent except in the sanity portion of a bifurcated trial. Petitioner's brief sets out the facts in this case at great length. The Court believes the Seventh Circuit's description of the *Steele* case included in its *Muench* opinion provides a concise summary:

Steele was tried in 1974 for the murder of his estranged wife. He stipulated prior to trial that he had purchased a revolver and ammunition on the morning of the killing, went to his estranged wife's residence, fired six bullets into his wife, and that she died almost immediately. Steele's sole defense in the guilt portion of the trial was that he did not intend to kill his estranged wife.

The testimony at trial revealed that Steele was upset about his separation from his wife, Joan, who was released from a psychiatric hospital in late January 1974, and took up residence with her child at a county foster home. When Steele learned this from a social worker, Frost, he became angry and threatened that if Joan stayed there, "he would get a gun and blow her head off." *Id.* [*Richard A. Steele v. State,* 97 Wis.2d 72] at 77, 294 N.W.2d [2] at 4. On February 4, Steele and his wife met with a marriage counselor, who recommended a divorce. After the meeting, an angry Steele struck his wife, knocking her to the ground, and later that day he told Frost "You can't guard [Joan] all the time. I'll get her sooner or later." *Id.* at 78, 294 N.W.2d at 4. The next day a county judge awarded custody of the child to Joan, prompting Steele to once again threaten Joan's life to Foster, though he later recanted the threatening statements, attributing them to alcohol. He also went to see a psychiatric social worker, Stamberger, to whom he expressed regret about striking Joan

and further recanted his threats. On February 7, the county judge refused Steele's request to visit his child on the child's birthday. Steele, a cab driver, picked up a customer shortly thereafter; the customer testified that Steele drove recklessly and looked "wild." *Id.*

Steele was distraught over the ensuing weekend. Monday morning, he visited Stamberger, who testified that Steele was very upset, cried, and looked tired. Steele next visited the county judge, unsuccessfully attempting to gain permission to visit the child. Then he purchased the revolver and went to Joan's residence, where the two argued. The owner of the foster home became alarmed, and left to call the police. As the police arrived on the scene, they heard gunshots. In the house they found Joan lying dead on the floor and Steele standing next to her, gun in hand. One officer testified that Steele appeared as though he was trying to figure out what he had done. The other officer testified that Steele appeared to be "realizing" what he had done. *Id.* at 79, 294 N.W.2d at 5. Also admitted into evidence was extensive evidence about Steele's psychiatric and personal history, including his previous stays in mental health facilities. The evidence, admitted without objection, was introduced "to cast doubt upon the defendant's intent to kill." *Id.*

The defense also attempted to examine several expert witnesses, including Stamberger, the psychiatric social worker, for the purpose of eliciting their opinions about Steele's capacity to form an intent to kill his wife. The trial court ruled the testimony inadmissible, applying "the then clear rule that psychiatric testimony concerning the defendant's capacity to form the specific intent to kill required for first degree murder was inadmissible in the first, or guilt, phase of a bifurcated trial." *Id.* at 80, 294 N.W.2d at 5.

*Muench v. Israel,* 715 F.2d 1124 at 1135–1136 (7th Cir.1983).

The status of the first ground raised by petitioner, the exclusion of expert psychiatric testimony on the issue of intent, has been rather uncertain in Wisconsin in recent years. Until 1978, a series of Wisconsin cases had consistently held that psychiatric evidence on the question of a defendant's mental capacity at the time of the crime is inadmissible during the guilt portion of a bifurcated trial. *Hughes v. State,* 68 Wis.2d 159, 227 N.W.2d 911 (1975); *Muench v. State,* 60 Wis.2d 386, 210 N.W.2d 716 (1973); *Sprague v. State,* 52 Wis.2d 89, 187 N.W.2d 784 (1971); *State v. Anderson,* 51 Wis.2d 557, 187 N.W.2d 335 (1971); *State v. Hebard,* 50 Wis.2d 408, 184 N.W.2d 156 (1971); *Curl v. State,* 40 Wis.2d 474, 162 N.W.2d 77 (1968). In 1977, however, the District Court for the Eastern District of Wisconsin granted a writ of habeas corpus to convicted murderer Hughes, reasoning that the exclusion of psychiatric testimony, coupled with the presumption that a defendant intends the consequences of his acts, unconstitutionally relieved the state of its burden to prove each element of the crime of first degree murder (i.e. intent). *Hughes v. Mathews,* 440 F.Supp. 1272 (E.D. Wis.1977). The Seventh Circuit affirmed the district court in *Hughes v. Mathews,* 576 F.2d 1250 (7th Cir.1978). However, the Court of Appeals went beyond the district court to find that not only was the exclusion of psychiatric testimony constitutionally impermissible when coupled with Wisconsin's jury instruction on presumption of intent, but that even the exclusionary rule standing alone was a violation of a defendant's right, under the Sixth and Fourteenth Amendments, to present evidence. In its decision, the Seventh Circuit found that expert psychiatric evidence on intent is both relevant and generally considered competent in Wisconsin and, in addition, that the state's justifications for exclusion were arbitrary.[1]

---

1. In the *Hughes* case, the state articulated two justifications for the exclusion: (1) the fear that "guilty" persons might go free on the basis of mental problems which did not amount to insanity; and (2) the preservation of the integrity of the bifurcated trial. The court of appeals rejected the first because in the *Hughes* case the jury was instructed on second degree

In the first case involving the exclusionary rule decided after the Seventh Circuit decision in *Hughes,* the Wisconsin Supreme Court in *Schimmel v. State,* 84 Wis.2d 287, 267 N.W.2d 271 (1978), held that *Hughes* required "the admission of competent psychiatric testimony during the guilt phase of a bifurcated trial relevant to the defendant's state of mind at the time of the crime". 84 Wis.2d at 302, 267 N.W.2d 271. It went on to overrule its prior decisions insofar as they were inconsistent with the new position.

The Wisconsin court reconsidered its decision in *Schimmel* in *Steele v. State,* 97 Wis.2d 72, 294 N.W.2d 2 (1979), and concluded that it had too hastily applied *Hughes,* which did not involve an insanity plea, to a bifurcated trial situation. In addition, the Wisconsin court clarified its position on the question of whether such psychiatric testimony is relevant and competent evidence and concluded that it is not. Accordingly, it found that exclusion of psychiatric evidence regarding Steele's mental capacity to form intent was proper.

█ Subsequent to the Wisconsin Supreme Court's decision in *Steele,* this Court received a habeas corpus petition from Robert Muench. It presented as one of its grounds this same challenge to Wisconsin's exclusion of psychiatric testimony on the ability to form intent. In ruling on that petition, this Court was mindful of its obligation to follow the dictates of the Seventh Circuit in *Hughes.* However, because this Court believed that the Wisconsin Supreme Court sought to clarify its own position in *Steele,* the Court also undertook a careful examination of that state pronouncement. This Court concluded:

> Wisconsin's decision [in *Steele*] holding that psychiatric evidence on the lack of capacity to form intent is both incompetent and irrelevant, is not arbitrary. That the Wisconsin Supreme Court chose to draw the line as to the admissibility of

psychiatric evidence at that point was not arbitrary. It was based on its firm belief, founded in the facts, that such evidence does not have sufficient reliability or probativeness to be admissible.

In his brief to this Court in support of his habeas petition, Steele urges the Court to reconsider its position as stated in *Muench* on whether the Wisconsin Supreme Court was arbitrary in its review of his case. He argues that the Wisconsin Supreme Court's decision in *Steele* was arbitrary for a variety of reasons, *i.e.* Wisconsin has recognized psychiatric testimony as competent evidence in a wide range of other situations, Wisconsin's prior cases excluding psychiatric testimony on the question of intent were based on factors other than irrelevance and incompetence, the record before the Wisconsin Court was not sufficient for it to assess relevancy and competency, etc. The Court notes, however, that all of these arguments were marshalled before the Seventh Circuit's recent affirmance of this Court's decision in *Muench.* Accordingly, the Court does not find it necessary to respond to each one. The Court need only turn to the Seventh Circuit's opinion which clearly holds that Wisconsin is not required by the Constitution to recognize a doctrine of diminished capacity.

> [O]ur task is not to determine whether the course Wisconsin has chosen is wise, but rather, whether it is so without legal foundation that it offends due process.

> . . . . .

> We therefore hold that a state is not constitutionally compelled to recognize the doctrine of diminished capacity and hence a state may exclude expert testimony offered for the purpose of establishing that a criminal defendant lacked the capacity to form a specific intent. Accordingly, we affirm the judgments of the district courts.

*Muench,* at 1144. In view of the foregoing, this Court finds that there was no violation

---

murder, so a finding that the defendant did not have the specific intent required for first degree murder would not necessarily have resulted in an acquittal. As for the second justification, it

was inapplicable to the facts of the *Hughes* case where the defendant withdrew his insanity plea.

of defendant Steele's constitutional due process right when expert psychiatric testimony on the question of intent was excluded.

## II.

■ The second ground advanced by petitioner is that the presumption of intent jury instruction violated his due process right to have the state prove every element of the crime beyond a reasonable doubt. However, this petition was fully briefed prior to the Seventh Circuit's decision in *Pigee v. Israel,* 670 F.2d 690 (7th Cir.1982). There the court of appeals upheld the constitutionality of the same stock Wisconsin jury instruction which is challenged in this case. Accordingly, this ground does not provide the basis for the issuance of a writ.

## III.

■ As his third ground for a writ, petitioner asserts that the trial court violated his due process rights when it refused to instruct the jury on second degree murder, a lesser included offense. Petitioner argues that there was ample evidence introduced at trial to demonstrate that he did not intend to kill his wife, *i.e.* he was under severe emotional distress (his wife and son were in a foster home, his wife wanted a divorce, a court had refused him permission to visit his son on his third birthday), he had gone without sleep and food, he had ingested a variety of drugs, and after the shooting, he had denied intending to kill her in his statement to police. Petitioner also points to a footnote in the Wisconsin Supreme Court's opinion in *Steele* which stated, in connection with its discussion of the presumption of intent jury instruction, that "there was substantial evidence of a non-expert nature that was admitted at the guilt phase that could have cast doubt on Steele's intent." 97 Wis.2d at 83 n. 3, 294 N.W.2d at 7.

Petitioner asserts that the trial court's refusal to give the second degree murder instruction was a denial of due process, not merely a violation of state law. Therefore, this ground states a cognizable habeas corpus claim. *Davis v. Greer,* 675 F.2d 141, 144 (7th Cir.1982). However, as the Seventh Circuit stated in *United States ex rel. Peery v. Sielaff,* 615 F.2d 402, 404 (7th Cir.1979):

> In a habeas action the question is whether the petitioner alleges a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1961).... Where it is the omission of an instruction that is at issue, the petitioner's burden is "especially heavy" because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977).

The Court does not find that the trial court's refusal of the instruction at issue here amounted to a "complete miscarriage of justice."

The trial judge cited *State v. Bergenthal,* 47 Wis.2d 668, 178 N.W.2d 16 (1970) and *Zenou v. State,* 4 Wis.2d 655, 91 N.W.2d 208 (1958) in support of his ruling denying the instruction on second degree murder. Tr. at 737. He apparently concluded, in line with the applicable Wisconsin test, that there was no reasonable basis in the evidence for conviction of the lesser offense. That is, there was no reasonable doubt on the question of intent. Certainly, Steele's repeated threats to his wife's life, his purchase of the gun on the day of the murder and his firing of six shots, each of which struck his wife, could convince the judge that no reasonable juror would have a doubt as to petitioner's intent to kill his wife. In any case, even assuming that a reasonable person could have a reasonable doubt on the intent issue based on the evidence of defendant's emotional stress, drug ingestion, etc., the Court still does not believe that this evidence is so strong that failure to give the second degree murder instruction amounted to a "fundamental miscarriage of justice."

The Court finds unpersuasive petitioner's argument regarding the Wisconsin Supreme Court's footnote on intent evidence as well as its argument based on *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1979). The Court agrees with respondent that petitioner cites the Wisconsin court's footnote 3 out of context. At that point in its opinion, the Wisconsin court was discussing the Seventh Circuit's holding on the presumption of intent jury instruction in *Hughes*. The Wisconsin court wished to distinguish the *Hughes* case, where no non-expert evidence on intent was introduced, from the *Steele* case, where such non-expert evidence was introduced. Thus, this Court does not believe that the Wisconsin court was making a judgment on the sufficiency of the evidence to mandate the giving of the second degree murder instruction. In any event, such a determination would not be binding upon this Court which must consider whether failure to give the instruction violated due process. As stated above, this Court does not find such a violation.

Finally, petitioner urges this Court to equate his situation with that presented in *Beck v. Alabama*. There, the United States Supreme Court held that the death penalty could not be imposed when the jury was not permitted, under the Alabama death penalty statute, to consider a lesser-included which would have been supported by the evidence. The Supreme Court stated:

> While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to

enhance the risk of an unwarranted conviction.

> Such a risk cannot be tolerated in a case in which the defendant's life is at stake. As we have often stated, there is a significant constitutional difference between the death penalty and lesser punishments....

447 U.S. at 637, 100 S.Ct. at 2389. Petitioner urges that the differences in Wisconsin between the penalties for first degree murder (mandatory life sentence) and for second degree murder (twenty year maximum) are substantial enough to "bring into play the fundamental fairness principles that led the Supreme Court to forbid the execution of Mr. Beck." First, the Court would note that the Supreme Court specifically did not hold that every defendant is entitled to a lesser included offense instruction as a matter of due process. Rather, it focused on the unique situation where capital punishment was involved and a state statute specifically forbad the giving of a lesser included instruction. This is a far cry from the situation here where capital punishment was not involved and where the trial judge was free to give the lesser-included instruction if he believed that, under a reasonable theory, the evidence supported such an instruction. The Court does not see this case as falling within the parameters of *Beck*. Therefore, it is constrained to apply the standard set forth by the Seventh Circuit for such reviews, *i.e.* has there been a fundamental miscarriage of justice? *Davis*, 675 F.2d at 145; *Peery*, 615 F.2d at 404. Having done so, the Court concludes that there has been no miscarriage of justice based on the refusal to instruct on second degree murder. Accordingly, a writ will not issue on this basis.

Based on the foregoing, the Court hereby DENIES the petition for a writ of habeas corpus.