MUENCH, Plaintiff in error, v. STATE, Defendant in error.

*No. State 98. Argued September 10, 1973.—Decided October 2, 1973.*

(Also reported in 210 N. W. 2d 716.)

For the plaintiff in error there was a brief and oral argument by *Raymond L. Hoel* of Cornell.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J.   The defendant raises several issues. The first one is that he should be granted a new trial in the interest of justice.

His principal arguments as to this issue are that trial counsel did not request a formal determination of competency to stand trial and that counsel did not advise the defendant to enter a plea of not guilty by reason of mental disease or defect.

Upon motion made in the county court, the defendant was committed to Central State for a physical and mental examination to determine his competency to stand trial.  A summary of this examination is as follows:

"The above-named was admitted to Central State Hospital on August 30, 1971 for a 60 day observation period, pursuant to WSS 971.14 (2).  He is charged with Murder, First Degree.

"During the observation period, a physical and neurological examination was performed.  Laboratory studies included a blood count, urinalysis, fasting blood sugar, serological test for syphilis, chest x-ray and electroencephalogram.  Psychological testing was performed. The results of these studies are incorporated in the Discharge Staff Note.

"Under the provisions of Section 971.14 (2)

"(a)  An individual psychiatric examination was made which included a review of the defendant's past personal history and a mental status examination.  A copy of the psychiatric examination and discharge staff note is enclosed;

"(b) From the above studies, the diagnosis was made of Inadequate Personality;

"(c) Although the defendant appears to be going out of his way to appear odd and mentally ill, this man does not suffer from a mental disease or defect which would impair his capacity to understand the proceedings against him or to assist in his defense."

This summary, together with copies of the reports of the defendant's physical examination, clinical psychological evaluation and psychiatric evaluation, was included in the report back to the county court. The reports reveal that the defendant had no significant physical impairments. He had stated that he had received blows to the head and did not recall anything that transpired after he entered the car the first time until the next morning about 10 o'clock. He was not unconscious and had no medical attention for the injury to his head or face. He was given an electroencephalogram which revealed no organic brain damage. Upon learning of the negative electroencephalogram he expressed disappointment and appeared eager to use insanity as a defense. The doctors who examined him concluded that at the time of the examination he had no mental disease or defect which would impair his capacity to understand the proceedings against him or to assist in his defense. The defendant himself expressed a desire to go to trial.

The entire report was filed and made a part of the record. It is apparent it was seen and utilized by defense counsel.

Neither at the time of the arraignment in circuit court nor at any time during the trial did the defendant object to proceeding upon the ground he lacked competency to stand trial. While better practice would require a specific order to be entered concerning his competency to stand trial, the record does not indicate any lack of such competency, and further proceeding without objection under the circumstances here constituted an effective waiver.

The defendant's appellate counsel now contends that upon the basis of the report of one psychiatrist who described the defendant as having an inadequate personality and some question as to his responsibility at the time of the offense that trial counsel should have entered a plea of not guilty by reason of mental disease or defect. A reading of the whole report does not reveal any mental disease or significant defect. It is our opinion that the trial counsel cannot be justifiably criticized for not advising or making, on behalf of the defendant, a plea of not guilty by reason of insanity based upon his evaluation of the report.

The defendant also contends that the district attorney probably did improperly advise witnesses not to talk to defense counsel but this advice was corrected and defense counsel had ample opportunity to consult with all the witnesses for the state and made no trial objection concerning this issue.

We find no prejudicial error in these contentions made by the defendant and no basis for ordering a new trial in the interest of justice.[1]

The defendant asserts he was deprived of his constitutional rights to a fair trial and effective assistance of counsel while being tried when suffering from amnesia.

The defendant claims because he received at least two blows to the head or face during the earlier phase of the altercations that he does not remember getting the knife or any further events until the next morning about 10 a. m.

There is no medical evidence or anything else in the record, except the subjective statements of the defendant and the observations and hearsay testimony of his associate, Faber, to indicate any loss of memory. The claim of amnesia is one easily fabricated after the event by one seeking to avoid responsibility for his acts. For

---

[1] *Schwamb v. State* (1970), 46 Wis. 2d 1, 173 N. W. 2d 666.

this reason alone it is an affirmative defense that must be established by the defendant by a clear preponderance of the credible evidence. Further, it is apparent from the record that he did in fact consult with his attorney and did assist in his own defense. Nor is there any question as to where, when, or what acts of the defendant produced the fatal result. Several witnesses testified without material variance that he went to the car, came back with a knife, pulled the deceased from Faber and while so doing fatally stabbed the deceased twice in the back. We hold the evidence does not establish that the defendant suffered from amnesia,[2] that he was competent to stand trial and that he was not deprived of his constitutional rights to a fair trial and effective assistance of counsel.

The defendant contends he is entitled to a new trial because the trial court refused to give the jury an instruction as to manslaughter based upon the defense of others.

The crime of manslaughter is, of course, a lesser crime than first-degree murder as charged in the information.

In *Day v. State* (1972), 55 Wis. 2d 756, 759, 201 N. W. 2d 42, we stated:

"The test or standard for determining when lesser degrees of homicide than that charged are to be submitted to the jury has been clearly stated to be:

" 'To justify submitting lesser degrees of homicide than that charged in the information, there must be a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser charge. . . .'

---

[2] Due process does not require that every person who claims amnesia cannot be tried for a criminal offense. *See United States v. Stevens* (7th Cir. 1972), 461 Fed. 2d 317. However, we do not reach the question in this case because of our opinion that the defendant has not met his burden to establish that he suffered from amnesia.

" ' "The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view, the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. . . .' ' "

The applicable manslaughter statute is sec. 940.05 (2) :

"**Manslaughter.** Whoever causes the death of another human being under any of the following circumstances may be imprisoned not more than 10 years :

" . . .

"(2) Unnecessarily, in the exercise of his privilege of self-defense or defense of others or the privilege to prevent or terminate the commission of a felony."

Self-defense, under the circumstances of this case, is defined as follows :

"**939.48 Self-defense and defense of others.** (1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. The actor may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself.

" . . .

"(4) A person is privileged to defend a third person from real or apparent unlawful interference by another under the same conditions and by the same means as those under and by which he is privileged to defend himself from real or apparent unlawful interference, provided that he reasonably believes that the facts are such that the third person would be privileged to act in

self-defense and that his intervention is necessary for the protection of the third person."

The trial court did submit verdicts and instructions for both first- and second-degree murder. Under the law and facts of this case that the trial court did not err in refusing to submit manslaughter, the killing was unnecessary as set forth in the manslaughter statute but it could not have been reasonably determined to be an act of self-defense of his own person or a third person. The fight had ended; Faber and the defendant could and did retreat to Faber's car. Faber clearly became the aggressor and the provoker [3] when he got out of his car and confronted the deceased with a gun. More importantly, the defendant could not have reasonably believed it was necessary to stab the deceased in the back when the deceased was unarmed and Faber had the gun.

The defendant also argues it was error to sustain an objection to the testimony of one of the psychiatrists who examined the defendant for competency as to the question of intent.

An offer of proof indicates the psychiatrist would testify that the defendant had been diagnosed as an inadequate personality.

The question of capacity to form an intent can be inferred from the acts and conduct of the defendant as well as his own description of his state of mind. He approached the unarmed deceased from the rear and stabbed him not once but twice in the back.

If a person is to be found incapable of forming the necessary criminal intent because of mental disease or deficiency such defense must be pursued by a plea of not guilty because of mental disease or deficiency and established in a bifurcated trial.

In *State v. Hebard* (1971), 50 Wis. 2d 408, 418, 184 N. W. 2d 156, we stated:

---

[3] *See* sec. 939.48 (2), Stats.

". . . If all, or nearly all, of the testimony (predictably psychiatric evaluations of the mental condition of the defendant at the time of the crime) that is relevant on the issue of insanity, is also material on the element of intent, the basis and reason for affording an option to bifurcate the trial are gone. In fact, if testimony as to mental condition relates to both issues, there would seem no sound reason left for a plea of not guilty by reason of insanity. Proof adequate to establish insanity would be at least adequate to raise a doubt as to intent and the long standing dispute as to who is to be held criminally responsible for wrongdoing would be replaced by disputes as to what degree of emotional or mental disorders would be sufficient to cast a doubt as to intent. . . ."

The final contention of the defendant is that it was error not to have changed the place of trial because of alleged unfavorable newspaper publicity. It appears that two newspapers in the vicinity of Chippewa Falls, the Eau Claire Leader and the Chippewa Herald Telegram, each carried one story prior to trial. The particular complaint is that there was a reference to the defendant as a "carnie." While it is doubtful that such a description could prejudice or sway a prospective juror it cannot be inferred it did affect the jury which heard this description in this case. The defendant himself, his witness and several other witnesses all referred to each other as "carnies" throughout the trial.

We find no error as contended by the defendant in refusing to change the venue.

*By the Court.*—Judgment affirmed.