STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott J. McINTOSH, Defendant-Appellant.†

Court of Appeals

*No. 86–1199–CR. Submitted on briefs December 10, 1986.—
Decided February 19, 1987.*

(Also reported in 404 N.W.2d 557.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Charles Bennett Vetzner,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney

general, and *Jerome S. Schmidt,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J. Scott McIntosh appeals from a judgment convicting him of homicide by negligent use of a motor vehicle contrary to sec. 940.08(1), Stats. There are two issues: (1) the sufficiency of the evidence of guilt; and (2) whether the trial court's denial of McIntosh's motion for a continuance of the trial due to his amnesia violated his constitutional right to a fair trial.

We conclude that the evidence, though predominantly circumstantial, was sufficient to convict. We are also satisfied that the trial court did not err in denying McIntosh's request for a continuance. Finally, because it is possible that McIntosh may seek a determination from the trial court on whether the fact of his amnesia denied him a fair trial, we adopt and set forth specific guidelines under which such determinations should be made.

The basic facts are not in dispute. The incident giving rise to the charge was a two-car collision. McIntosh, driving on a side road, went through a stop sign at an intersection with a U.S. highway and collided with an automobile proceeding on the highway, killing the other driver.

After the collision, it was discovered that the front brake line in McIntosh's car was severed, although none of the experts who testified on the subject was able to state whether the rupture had occurred before, or as a result of, the impact. McIntosh was suffering from amnesia and did not testify at trial. As a result, both the prosecution's case and McIn-

tosh's defense were largely circumstantial. Other facts will be referred to below.

## I. SUFFICIENCY OF THE EVIDENCE

When the sufficiency of the evidence is challenged, we do not retry the case on appeal to determine whether we are collectively convinced of the defendant's guilt. *Fox v. State,* 60 Wis. 2d 462, 470, 210 N.W.2d 722, 726 (1973). We will affirm if a jury, acting reasonably, could have found the defendant guilty beyond a reasonable doubt. *Fells v. State,* 65 Wis. 2d 525, 529, 223 N.W.2d 507, 510 (1974). We will reverse only when the evidence considered most favorably to the state and the conviction is so insufficient that as a matter of law no trier of fact acting reasonably could be convinced to that degree of certitude defined as "beyond a reasonable doubt." *State v. Burkman,* 96 Wis. 2d 630, 643, 292 N.W.2d 641, 647 (1980).

"A finding of guilt may rest upon evidence that is entirely circumstantial." *Struzik v. State,* 90 Wis. 2d 357, 363, 279 N.W.2d 922, 924 (1979). Indeed, "[o]ften times circumstantial evidence is stronger and more satisfactory than direct evidence." *Clark v. State,* 62 Wis. 2d 194, 197, 214 N.W.2d 450, 451 (1974).

In order for circumstantial evidence to meet the "beyond a reasonable doubt" standard, it has been said that it "must be sufficiently strong to exclude every reasonable hypothesis of innocence." *Peters v. State,* 70 Wis. 2d 22, 34, 233 N.W.2d 420, 426 (1975). This does not mean, however, that if *any* of the evidence brought forth at trial suggests innocence, the jury cannot nonetheless find the defendant guilty, for

the rule "refers to the evidence which the jury could have believed and relied upon to support its verdict." *Id.* at 34, 233 N.W.2d at 427.

> The function of the jury is to decide which evidence is credible and which is not, and how conflicts in the evidence are to be resolved. The jury can thus, within the bounds of reason, reject testimony suggestive of innocence. The rule that the circumstantial evidence must exclude every reasonable theory of innocence refers to the evidence which the jury could have believed and relied upon to support its verdict. *State v. Wyss,* 124 Wis. 2d 681, 693, 370 N.W.2d 745, 751 (1985), quoting *Peters,* 70 Wis. 2d at 34, 233 N.W.2d at 426–27. [Footnote omitted.]

It was undisputed that after stopping at a stop sign one-half mile down the road, McIntosh's car, traveling at sixty-five miles per hour, never slowed as it passed the stop sign at the highway intersection and struck the victim's car. Witnesses saw no evasive action on McIntosh's part, and no skidmarks were found on the road on which he was traveling. McIntosh did not testify, and the verdict turned on circumstantial evidence of his negligence. The determinative question became whether his failure to stop or decrease his speed resulted from McIntosh's negligence or from a sudden, unanticipated failure of the car's brakes.

A state trooper arriving at the scene shortly after the accident saw that the entire front portion of McIntosh's car was extensively damaged and that the brake line in that area had been "severed [and] torn in two." He also stated that the car's brake fluid reservoir was still half full. The trooper and a deputy sheriff walked the path McIntosh's car had taken

prior to the collision and found no skidmarks or brake fluid deposits on the roadway.

The trooper asked two mechanics who had come to the scene with their wreckers, James Davies and Terry Bystol, to check the brakes on McIntosh's car. Davies testified that the front brake line was broken and there was no brake pressure when he depressed the pedal. He stated that the fluid reservoir contained only a small amount of fluid, although he considered it to be enough for the brakes to operate properly had the line been intact. He testified that he had no way of knowing how the line had been severed.

Bystol depressed the brake pedal and, when it went "to the floor," he concluded that there was a break in the line. He made no further inspection. He testified that brakes can fail for "a number of reasons," that if the line breaks abruptly the car will lose its brakes "instantly," and that a similar result would ensue with a smaller, rust-caused leak in the line. According to Bystol, it would be possible, but unlikely, for leaks from a small, rust-caused hole to leave visible deposits on the road surface.

Bystol did not inspect the brake line or the fluid reservoir and was unable to say whether the car had been fitted with more than one brake cylinder. Nor could he state whether or not the brakes were working prior to the collision. He acknowledged that the damage to the brake system could have been caused by the collision.

A third mechanic, David Rochon, examined McIntosh's car two days before the trial—some seven months after the accident. While he testified that the brake lines were rusty and in an "extensively deteriorated" condition, and that a rust hole could have led to brake failure, he conceded that he did not know the

condition of the lines at the time of the accident. And, although he doubted that the brakes were operable on the day of the accident, Rochon stated that there was "no way of determining" when the line break occurred or whether the system had failed on the day of the accident.

It is argued that two equally reasonable, equally plausible inferences can be drawn from these facts: (1) that the brakes on McIntosh's car failed suddenly, without any negligence on his part, when he stepped on the pedal; or (2) that McIntosh did not attempt to apply the brakes at all before he entered the intersection and the brake line was severed in the collision. Because one inference is consistent with innocence and the other with guilt, McIntosh argues that the jury may not choose between them but must acquit. We disagree.

■

We do not believe a jury could reasonably infer that the collision was caused by a spontaneous rupture in the brake line when McIntosh applied the brakes as he approached the intersection. The evidence was uncontradicted that McIntosh's vehicle did not slow down—did not decrease its speed at all—and did not deviate in its path or otherwise take evasive action prior to the collision. If McIntosh had attempted to brake, it is reasonable to assume that he would have removed his foot from the accelerator and the car would have visibly slowed. If the brakes suddenly failed, it would be reasonable to expect him to undertake some action—swerving or perhaps downshifting—to slow his speed or otherwise avoid the impending collision. Because the undisputed evidence was that McIntosh neither slowed down nor attempted in any way to avoid the collision, the jury could

reasonably reject the inferences consistent with his innocence and could have found guilt beyond a reasonable doubt. As a result, we may not disturb their verdict.

## II. FAIR TRIAL

McIntosh received severe head injuries in the accident. Prior to trial he asked the court to suspend the proceedings on grounds that he had no memory of the incident and thus would be unable to assist in his defense or to testify in his own behalf. He sought appointment of a psychiatrist "to confirm his inability to proceed."

The court appointed a psychiatrist, who concluded that: (1) McIntosh's amnesia was consistent with his injuries; (2) there was "no reason to doubt the permanence of a significant part of [his] memory loss"; and (3) while McIntosh was unable to recall the details of the accident, he was nonetheless "able to assist counsel in his own defense ... to understand the nature of legal proceedings and charges against him ... [and] otherwise able to work effectively with counsel."

At a subsequent pretrial conference, McIntosh requested the trial court to stay all proceedings indefinitely, with periodic reexaminations, until such time as the amnesia might disappear.[1] The court

---

[1]As indicated, the psychiatrist's report suggested that McIntosh's memory loss is permanent. While the trial court's ruling does not discuss McIntosh's request for periodic reevaluation, he does not appear to dispute the permanency of his condition, for he advances no argument to the contrary.

As a result, the concern expressed by some courts that the amnesia might be feigned is not present here. *See State v. McClendon*, 437 P.2d 421, 424 (Ariz. 1968).

heard the arguments of counsel and denied the request, citing the psychiatrist's opinion (and his own counsel's concession) that McIntosh understood the charges and the proceedings and was able to assist in his defense. The court concluded its ruling by suggesting to counsel that, in the event of a conviction, "the issue should be again called to the attention of the court ... [which would then] be in a much better position to weigh the testimony in determining whether or not amnesia did deprive Mr. McIntosh of due process."

McIntosh does not challenge the trial court's conclusion that he understood the charge and the nature of the proceedings and was able to assist in his own defense. Rather, he argues that, because his amnesia deprived him of the ability to take the stand and offer his own description of the events leading up to the accident, he was deprived of a fair trial.

The question is one of first impression in Wisconsin. While similar arguments were raised in two reported cases, *State v. Leach,* 124 Wis. 2d 648, 675, 370 N.W.2d 240, 254 (1985), and *Muench v. State,* 60 Wis. 2d 386, 392–93, 210 N.W.2d 716, 719 (1973), in both instances the court determined that the defendants were not in fact suffering from amnesia and never reached the issue. Here, McIntosh's amnesia was established by the evidence, and the nature of his memory loss is not challenged by the state.

McIntosh does not claim that requiring an amnesiac to stand trial is, *per se,* a denial of his or her constitutional rights or the right to a fair trial. Indeed, the majority rule is that amnesia does not by itself either render a defendant incompetent to stand trial or, if tried, unable to be tried fairly. Annotation, *Amnesia As Affecting Capacity to Commit Crime or*

*Stand Trial,* 46 A.L.R.3d 544 (1972 & Supp. 1986). McIntosh's general competency to stand trial is not at issue. He argues only that taking him to trial under the circumstances of this case deprived him of his right to a fair trial.

In a sense, the inability to testify personally as to certain facts is a disability shared in greater or lesser degree by all defendants as a result of normal attrition of memory or failure of observation.

> In his plight the amnesiac differs very little from an accused who was home alone, asleep in bed, at the time of the crime or from a defendant whose only witnesses die or disappear before trial. Furthermore, court, of necessity, must decide guilt or innocence on the basis of available facts even where those facts are known to be incomplete, and the amnesiac's loss of memory differs only in degree from that experienced by every defendant, witness, attorney, judge, and venireman. How much worse off is a generally amnesic defendant on trial for murder, for example, than one who remembers all but the dispositive fact: who struck the first blow? [Footnote omitted.] Notes and Comments, *Amnesia: A Case Study in the Limits of Particular Justice,* 71 Yale L. J. 109, 128 (1961–62).

There will be cases, however, where the fact of amnesia will deny an otherwise competent defendant a fair trial. Because the fundamental fairness of trying an amnesiac may vary depending upon the particular facts of the case, the propriety of trying the defendant must be determined on a case-by-case basis. Where, as here, permanent amnesia has been medically established, and competency in the sense of understanding the charges and procedures and assisting in

the defense is not at issue, the question must be considered from the objective standpoint of whether, despite the amnesia, the defendant can receive a fair trial. *United States v. Swanson,* 572 F.2d 523, 527 (5th Cir.), *cert. denied,* 439 U.S. 849 (1978).

Where the amnesia appears to be temporary, an appropriate solution might be to continue the trial for a reasonable period to see whether the defendant's condition improves. That alternative was foreclosed here, however, in light of the psychiatrist's opinion that McIntosh's condition was permanent.

While it might be possible in some cases for the court to conclude before trial that the defendant's amnesia would deny him or her a fair trial, in many cases such an assessment will have to await the trial's end. In *Wilson v. United States,* 391 F.2d 460 (D.C. Cir. 1968), the court held that, when faced with such a situation, the trial court may allow the case to go to trial and, at its conclusion, determine whether, despite the amnesia, the defendant was nonetheless fairly tried. *Id.* at 463. In the event of conviction, the court should then, after taking any additional evidence deemed necessary, make written findings on the effect of the defendant's amnesia on the fairness of the trial. *Id.* Judge Wright, writing for the majority in *Wilson,* listed the following as factors to be considered in making such a determination:

> (1) The extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer.
> (2) The extent to which the amnesia affected the defendant's ability to testify in his own behalf.
> (3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would include

evidence relating to the crime itself as well as any reasonably possible alibi.

(4) The extent to which the Government assisted the defendant and his counsel in that reconstruction.

(5) The strength of the prosecution's case. Most important here will be whether the Government's case is such as to negate all reasonable hypotheses of innocence. If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so.

(6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial. *Id.* at 463–64.

After finding the facts bearing on the fairness of the trial, the court would then decide "whether, under applicable principles of due process, the conviction should stand." *Id.* at 464. (Footnote omitted.)

If the court determines that the conviction may not stand because of the unfairness of the trial caused by the defendant's amnesia, the court will vacate the conviction and give the Government an opportunity to retry the case. If on retrial the Government is unable to overcome the unfairness which would have thus voided the first conviction, the indictment will be dismissed. *Id.*

While the precise situation has not arisen often, the majority of cases considering the issue since *Wilson* have adopted Judge Wright's approach. *See State v. Ferguson,* 547 P.2d 1085, 1086–87 (Ct. App. Ariz. 1976); *Parson v. State,* 275 A.2d 777, 787 (Del. 1971); *Com. v. Lombardi,* 393 N.E.2d 346, 349–50 (Mass. 1979); *People v. Francabandera,* 310 N.E.2d 292,

296 (N.Y. 1974). We align ourselves with those cases and adopt the rule and reasoning of *Wilson.*

■

We hold, therefore, that where it is established that an otherwise competent defendant is suffering from amnesia or other memory disorder that might implicate his or her right to a fair trial, the court may, in its discretion, permit the trial to continue. At the trial's conclusion and on motion of the defendant, the court should then proceed as in *Wilson* to determine whether, in light of the defendant's disability, he or she nonetheless received a fair trial. If the court concludes that the defendant was unfairly tried, it may, if it appears that retrial would overcome the unfairness, order a new trial.

In this case, the trial court suggested just such a procedure when it denied McIntosh's pretrial motion for a continuance. McIntosh declined to follow the suggestion. As a result, the trial court was never given the opportunity to consider the issue.

While we affirm the conviction, McIntosh, if he feels his amnesia may have denied him a fair trial, may nonetheless apply to the trial court for such postconviction relief as may be available to him. The court may at that time proceed to consider the fairness issue in a manner consistent with this opinion.

*By the Court.*—Judgment affirmed.