**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 29, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2020AP1597-CR**

Cir. Ct. No.  2018CF5088

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEFFREY LEMONT LEE,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE ACKERMAN HAVAS, Judge. *Affirmed.*

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Jeffrey Lemont Lee appeals his judgment of conviction for aggravated battery, substantial battery, disorderly conduct with the

use of a dangerous weapon, and felony bail jumping, all with domestic abuse assessments and as a habitual offender. Lee also appeals an order denying his postconviction motion without a hearing.

¶2 Lee argues that the trial court did not properly exercise its discretion when it denied Lee's request for a jury instruction on perfect self defense. Lee further argues that the court erred in denying the claims in his postconviction motion: that the charges should be dismissed on due process grounds because he had no memory of the incident that resulted in the charges against him, and thus he should not have been prosecuted; and that his trial counsel was ineffective for failing to ensure that a photo was preserved of a chest wound Lee sustained during the incident, depicting its severity at that time. We disagree, and therefore affirm.

## BACKGROUND

¶3 The charges against Lee stem from an incident that occurred in October 2018 with B.S.R., Lee's live-in girlfriend. B.S.R. told police that she and Lee got into an argument in their apartment, and that Lee hit her approximately fifteen times in the head with a closed fist. B.S.R. also said that Lee pulled out a knife at one point in the altercation. B.S.R. stated that she tried to take her three-year-old daughter and leave, but Lee would not allow her to go. Eventually, B.S.R. called her mother, who picked up B.S.R. and the child.

¶4 B.S.R.'s mother took her to the police station to report the incident. The police called for an ambulance and B.S.R. was taken to the hospital, where she was examined and underwent a CT scan. The scan showed that B.S.R. had internal bleeding on the top of her head, a nasal fracture, and broken veins in her forehead. She was admitted into the intensive care unit; overall, she spent nine days in the hospital.

¶5    Lee was charged with aggravated battery, substantial battery, false imprisonment, disorderly conduct with a dangerous weapon, and felony bail jumping, all with a domestic abuse assessment and as a habitual offender. The matter proceeded to a jury trial in February 2019.

¶6    During the trial, Lee testified in his own defense. Lee claimed that B.S.R. had started the physical altercation that night by pushing him "in [the] head" while he was trying to take a nap. Lee stated that he was later awakened by B.S.R. hitting him in the head with a pot. He said that she also threw a vase at him which shattered, and then she began "jabbing" him in the chest with a piece of the broken vase. Lee claimed that he began losing a lot of blood, "felt [himself] getting weak" and then "blacked out." He stated that he did not remember anything after that; he said he did not know how B.S.R. had sustained her injuries, and that he did not remember hitting her.

¶7    There was a photo of Lee's chest wound admitted into evidence, which Lee said was taken three months after the incident occurred, when it was "healing up." Lee admitted during his testimony that he did not get stitches or seek any medical attention for the wound. Lee's friend, Shontay Harris, testified about caring for his wound on the night of the incident. Harris described the wound as looking like "pink meat" and said she thought Lee should have gone to the hospital.

¶8    B.S.R.'s testimony conflicted with Lee's version of events. She testified that the argument between her and Lee that night began verbally over finances and "relationship issues[.]" She stated that it then turned physical when Lee began punching her with closed fists. B.S.R. denied attacking Lee; she admitted that she threw a glass at Lee when she was fighting back during the altercation, but said that it missed him. She also stated that with the exception of throwing the glass,

she only fought back with her hands. She maintained that she never hit him with a pot or pan, nor did she cut him with any of the broken pieces from the glass she threw at him. Furthermore, B.S.R.'s mother testified that Lee had called her earlier that evening, complaining that B.S.R. was arguing with him, and that if it continued he was going to "flip[] out and beat her up[.]"

¶9      B.S.R. testified regarding her injuries and the medical report from the hospital was introduced into evidence. The police officer who accompanied B.S.R. to the hospital that night also testified, stating that B.S.R.'s face was "very swollen" on both sides and that there was blood coming from her lips. The officer further noted B.S.R.'s demeanor—that she was "very nervous, fearful, and crying."

¶10     At the jury instruction conference, trial counsel for Lee requested an instruction for perfect self defense. In support of the request, counsel pointed to Lee's testimony that B.S.R. had attacked him with a pot and then cut him. However, the State pointed out that Lee testified that he had blacked out and had no memory of taking any physical action against B.S.R., and that without any such testimony, there was no support for self defense. The trial court agreed, and denied Lee's request for the self defense instruction.

¶11     The jury convicted Lee on all charges except for false imprisonment. The trial court sentenced Lee in June 2019 to a total of fourteen years, bifurcated as seven years of initial confinement and seven years of extended supervision.[1]

¶12     Lee filed a postconviction motion in September 2020. He argued that the charges against him should be dismissed because he had no memory of the

---

[1] The total length of extended supervision was subsequently amended to four years, based on statutory requirements.

events, and therefore it was a due process violation to prosecute him. He asserted that his "amnesia" kept him from providing sufficient testimony to establish self defense, which in turn prevented him from receiving a fair trial.

¶13     Lee also claimed that his trial counsel was ineffective for failing to obtain a photograph of his chest wound immediately after the incident. Lee conceded that Harris's testimony described the wound as it looked that night, but that counsel was nevertheless deficient for failing to obtain a photograph because "a picture speaks a thousand words." He argued that he was prejudiced by this error because it contributed to the trial court's denial of his request for the self defense instruction.

¶14     The trial court found these claims to be without merit. The court observed that Lee had offered no evidence, either during the trial or in his postconviction motion, to support his claim of amnesia. Therefore, the court found his "subjective claim" to be insufficient to trigger a due process assessment. The court further noted that it stood by its reasoning provided at trial for denying Lee's request for the self defense instruction.

¶15     With regard to Lee's ineffective assistance claim, the trial court stated that in addition to the "ample testimony" relating to Lee's chest wound, the issue at trial was not the severity of his wound, but rather the credibility of the witnesses. The court observed that B.S.R. had testified "very credibly" that Lee was the aggressor in the incident, while Lee "gave self-serving, unsupported testimony that he was the victim of a vicious attack and that he had no memory of any of the events that came after." Therefore, the court found that Lee had not shown that a more graphic photo of his injury would have made a difference in the outcome of the trial and, as a result, he had not demonstrated prejudice.

5

¶16     Accordingly, the trial court denied Lee's postconviction motion without a hearing. This appeal follows.

## DISCUSSION

*Self Defense Jury Instruction*

¶17     We first address Lee's argument that the trial court erred in not giving the self defense jury instruction. A trial court "has broad discretion in deciding whether to give a requested jury instruction." *State v. Stietz*, 2017 WI 58, ¶12, 375 Wis. 2d 572, 895 N.W.2d 796. "We will not find an erroneous exercise of discretion where the [trial] court applies the facts of record to accepted legal standards." *State v. Jackson*, 216 Wis. 2d 646, 655, 575 N.W.2d 475 (1998). Whether there are "sufficient facts to warrant the [trial] court's instructing the jury on self[]defense," however, is a question of law that we review independently, but benefiting from the analysis of the trial court. *See Stietz*, 375 Wis. 2d 572, ¶14.

¶18     The privilege of self defense allows for a person to "threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person." WIS. STAT. § 939.48(1) (2019-20).[2] However, the person exercising the privilege "may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference." *Id.* In other words, the person exercising the privilege "must intend to use some force or to threaten force against another for the purpose of self[]defense." *Cleghorn v. State*, 55 Wis. 2d 466, 469, 198 N.W.2d 577 (1972).

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

6

¶19 Based on the language of the statute, there are two components to the privilege of self defense which must be met by a defendant in order to exercise the privilege: (1) the subjective component, in which the defendant "must have actually believed he or she was acting to prevent or terminate an unlawful interference;" and (2) the objective component, where the defendant demonstrates that this belief was "reasonable." *State v. Giminski*, 2001 WI App 211, ¶13, 247 Wis. 2d 750, 634 N.W.2d 604. The burden is on the defendant to produce evidence to satisfy these components. *Id.*, ¶11.

¶20 To meet this burden, a defendant must present "some evidence" that supports the exercise of the privilege. *Stietz*, 375 Wis. 2d 572, ¶16 (citation omitted). Reaching this level is a "low bar"; it is deemed satisfied "even if it is 'weak, insufficient, inconsistent, or of doubtful credibility' or 'slight.'" *Id.* at ¶¶16-17 (citations omitted). However, in this case, the evidence regarding self defense—Lee's testimony—did not establish that he intentionally used force against B.S.R. for purposes of self defense, because he stated that he did not remember hitting her. Therefore, Lee did not demonstrate a reasonable belief that he had to use that level of force against B.S.R. to stop her alleged attack on him.

¶21 A trial court may deny a defendant's request for a self defense instruction "when no reasonable basis exists" to establish the statutory requirements: that the defendant "belie[ved] that another person was unlawfully interfering with his person and that the defendant used or threatened the use of such force as he reasonably believed necessary to prevent or terminate the interference." *Id.*, ¶15. Here, Lee's testimony that he did not remember using force against B.S.R. did not provide any basis that would have allowed the trial court to make a determination regarding the reasonableness of his belief at that time. In fact, in finding that the evidence did not support self defense, the court indicated that its

decision was "[b]ased on the nature of the testimony—I mean, testimony comes out the way that it comes out. And I know that nobody ever knows exactly how that is going to be."

¶22     Simply put, there were insufficient facts in evidence here to warrant giving the self defense instruction. *See id.*, ¶14. Therefore, the trial court did not err in denying Lee's request for the instruction.[3] *See Jackson*, 216 Wis. 2d at 655.

*Due Process Claim Relating to Amnesia*

¶23     Lee next argues that the trial court erred in not granting an evidentiary hearing regarding his claim that his right to due process was violated because he was prosecuted on these charges even though he cannot remember all of the events that occurred. He asserts that his "amnesia" kept him from providing sufficient testimony to establish self defense.

¶24     A defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). Rather, the trial court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. This is a question of law that we review *de novo*. *Id.*, ¶9.

---

[3] In his appellant's brief, Lee mentions a motion he filed prior to trial in which he sought to admit evidence relating to an alleged attack on him by B.S.R. that occurred approximately two months prior to the incident in this case. The trial court ruled that this evidence could be admitted only in the event that a basis for self defense was established. Lee suggests that this ruling was erroneous, but presents no argument or legal support for this statement; therefore, we will not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (this court generally does not consider arguments that are undeveloped or unsupported by legal authority).

¶25    If, on the other hand, the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the trial court, in its discretion, may either grant or deny a hearing. *Id.* We will uphold such a discretionary decision if the trial court "has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." *Bentley*, 201 Wis. 2d at 318.

¶26    In support of his argument, Lee relies on *State v. McIntosh*, 137 Wis. 2d 339, 404 N.W.2d 557 (Ct. App. 1987). In *McIntosh*, this court determined that "where it is established that an otherwise competent defendant is suffering from amnesia or other memory disorder that might implicate his or her right to a fair trial, the court may, in its discretion, permit the trial to continue," but that at the end of the trial, upon a motion by the defendant, the court should consider "whether, in light of the defendant's disability, he or she nonetheless received a fair trial." *Id.* at 351.

¶27    There are several problems with Lee's claim under this standard. In the first place, *McIntosh* directs that further consideration by the trial court is done at the end of trial pursuant to a motion by the defendant. *Id.* at 351. Lee made no motion relating to the fairness of his trial due to his claimed amnesia; instead, he only made a request for the self defense jury instruction. "Issues that are not preserved at the [trial] court, even alleged constitutional errors, generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727.

¶28    Furthermore, the defendant in *McIntosh* presented medical evidence from a psychiatrist that he was suffering from permanent amnesia as a result of head

injuries he had sustained in the accident that resulted in the charges against him. *Id.*, 137 Wis. 2d at 346. Here, the only evidence regarding Lee's amnesia was his own testimony at trial; he provided no additional evidence of his amnesia, such as medical confirmation of the diagnosis, in his postconviction motion. In short, he has not alleged sufficient facts to show that he would be entitled to relief on this claim; instead, he has presented only conclusory allegations. As a result, the trial court did not err in denying a postconviction evidentiary hearing. *See Allen*, 274 Wis. 2d 568, ¶9.

*Ineffective Assistance of Counsel Claim*

¶29 Finally, Lee asserts that his trial counsel was ineffective for failing to preserve a photo of his chest wound taken just after the incident, as opposed to introducing into evidence the photo of the wound taken approximately three months afterwards, when it had healed. To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." *Allen*, 274 Wis. 2d 568, ¶26. We review *de novo* "'the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding.'" *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶30 In denying Lee's ineffective assistance of counsel claim, the trial court determined that Lee had failed to show that he was prejudiced by any error of his

trial counsel relating to the photo of his chest wound. To prevail under the prejudice prong of the **Strickland** test, a defendant "must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" **State v. Love**, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62 (citations and one set of quotation marks omitted).

¶31 In its decision, the trial court pointed out that there was "ample testimony" at trial about the appearance of Lee's chest wound on the night of the incident provided by Harris, Lee's friend who treated the wound. Furthermore, the court observed that "the issue at trial was not the severity of [Lee]'s cut *per se* but the credibility of the witnesses[.]" It noted that B.S.R. had testified "very credibly" that Lee was the aggressor during the incident. The court further noted the testimony of B.S.R.'s mother regarding Lee's phone call to her that night, indicating that he was about to "flip[] out" and "beat [B.S.R.] up[.]" Lee's testimony claiming he did not remember the events, on the other hand, was described by the trial court as "self-serving" and deemed to be not as credible.

¶32 Additionally, the jury heard testimony from both B.S.R. and the police officer who accompanied her to the hospital about the extent of her injuries, as well as testimony from the officer regarding B.S.R.'s demeanor that night. B.S.R.'s medical records from her treatment at the hospital were also introduced into evidence.

¶33 After reviewing the record, we conclude that even if a photo of Lee's chest wound that was taken closer in time to the incident had been presented at trial, there is not a reasonable probability that the outcome would have been different given the compelling nature of the other evidence in this case. Therefore, Lee has

11

not established the prejudice prong of the *Strickland* test and, as a result, his ineffective assistance of counsel claim fails. *See Allen*, 274 Wis. 2d 568, ¶26. Thus, the trial court did not err in denying his claim without granting a postconviction hearing. *See id.*, ¶14.

¶34 Accordingly, because all of Lee's claims fail, we affirm his judgment of conviction, as well as the trial court's order denying his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.