# COURT OF APPEALS
# DECISION
# DATED AND FILED

## January 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1968-CR**

Cir. Ct. No. 2019CF1724

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

TROY J. HOFFMAN,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: ROBERT S. REPISCHAK, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Troy J. Hoffman appeals a judgment of conviction, entered on his no-contest plea, for first-degree intentional homicide.   He also appeals an order denying postconviction relief.   On appeal, Hoffman argues he has no memory of the events underlying the conviction and he should be permitted to withdraw his plea because trial counsel was ineffective for failing to advise him of a *McIntosh*[1] defense.   We conclude Hoffman is not entitled to plea withdrawal because he failed to establish trial counsel was ineffective.   We affirm.

## BACKGROUND

¶2     According to a criminal complaint, Hoffman found out that his girlfriend, S.R., was romantically involved with Chad Bickler.   While S.R. was en route to Bickler's residence, S.R. received a text from Hoffman stating he would kill Bicker if S.R. was going to see him.   As S.R. approached Bickler's residence, she saw headlights in her rearview mirror and said that her car was struck from behind.   S.R. exited her car and argued with Hoffman, who was holding a handgun. S.R. saw Hoffman walk towards the house and heard several gunshots.   Hoffman then walked back to where he and S.R. argued and began firing at S.R., who ran. Bickler was shot multiple times and died.   A dog at Bickler's residence was also shot and killed.   The State charged Hoffman with first-degree intentional homicide,

---

[1] *State v. McIntosh*, 137 Wis. 2d 339, 404 N.W.2d 557 (Ct. App. 1987).  In *McIntosh*, we determined that "amnesia does not by itself either render a defendant incompetent to stand trial or, if tried, unable to be tried fairly." *Id.* at 347.  We noted "[t]here will be cases, however, where the fact of amnesia will deny an otherwise competent defendant a fair trial." *Id.* at 348.  "Where … permanent amnesia has been medically established, and competency in the sense of understanding the charges and procedures and assisting in the defense is not at issue, the question must be considered from the objective standpoint of whether, despite the amnesia, the defendant can receive a fair trial." *Id.* at 348-49.  Courts consider a multifactor analysis to determine the effect of the defendant's amnesia on the fairness of trial. *Id.* at 349-50.

attempted first-degree intentional homicide, and felony mistreatment of an animal—all with use of a dangerous weapon.

¶3     After Hoffman was evaluated and deemed competent by the circuit court, Hoffman pled no contest to first-degree intentional homicide, use of a dangerous weapon.  The other charges were dismissed and read-in.  Hoffman maintained he had no memory of the events relating to the charges.  The court sentenced Hoffman to life in prison without eligibility for release to extended supervision.

¶4     Hoffman moved to withdraw his plea on the basis of ineffective assistance of counsel.  Hoffman claimed, in part, that trial counsel failed to inform him that under *State v. McIntosh*, 137 Wis. 2d 339, 404 N.W.2d 557 (Ct. App. 1987), his amnesia allowed him to contest his ability to be fairly tried, and if he had known of the availability of this defense, he would not have pled no contest and would have instead taken his case to trial.

¶5     Following a *Machner*[2] hearing, the circuit court denied Hoffman's motion.  It found that the "contemporary evidence," including the psychologists' reports, provided no medical support for his due process claim.  The court determined that although counsel did not consider the *McIntosh* defense or discuss the defense with Hoffman, counsel's reliance on the psychologists' reports and the lack of a medical condition that explained Hoffman's memory loss was not unreasonable and that it supported "the strategic decision to cut his losses and enter into a plea."  Further, based on the information available and counsel's discussions

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

with Hoffman, "the court [could not] find that … trial counsel's performance fell below reasonable professional standards."

¶6 As for prejudice, the circuit court applied the relevant *McIntosh* factors to Hoffman's case and determined that Hoffman's due process claim would not have succeeded at trial. The court also found that Hoffman had "not presented any evidence that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." It determined that Hoffman's statement that he would not have accepted the plea and gone to trial was insufficient to support his claim. The court found the contemporaneous evidence showed Hoffman was "without any medical support for his amnesia claim" and "he was facing 'bad facts,' as testified to by trial counsel." By entering into a plea agreement, Hoffman reduced his exposure and agreed with the strategy to "cut our losses and beg for mercy." The court determined counsel was not ineffective and denied Hoffman's motion for plea withdrawal.

## DISCUSSION

¶7 On appeal, we review a circuit court's denial of a plea withdrawal motion under the erroneous exercise of discretion standard. *State v. Savage*, 2020 WI 93, ¶24, 395 Wis. 2d 1, 951 N.W.2d 838. A plea withdrawal motion predicated on an ineffective assistance of counsel claim raises a mixed question of fact and law. *Id.*, ¶25. To establish a claim of ineffective assistance, a defendant must prove both: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both elements of the ineffective assistance test if the defendant fails to make a sufficient showing on one of them. *State v. Dalton*, 2018 WI 85, ¶32, 383 Wis. 2d 147, 914 N.W.2d 120.

¶8 "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." *Id.*, ¶34. "In evaluating counsel's performance, this court is highly deferential to counsel's strategic decisions." *Id.*, ¶35. We must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

¶9 To establish prejudice in the plea context, a defendant has two options. "First, the defendant can demonstrate based on 'contemporaneous evidence' that counsel's deficient performance so offended 'expressed preferences' such that the defendant would have not pleaded guilty." *Savage*, 395 Wis. 2d 1, ¶35 (citation omitted). "Second, the defendant can demonstrate that the defense would have likely succeeded at trial." *Id.*

¶10 Under *McIntosh*, courts consider a multifactor analysis to determine whether an amnestic defendant can receive a fair trial:

> (1) The extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer.
>
> (2) The extent to which the amnesia affected the defendant's ability to testify in his own behalf.
>
> (3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would include evidence relating to the crime itself as well as any reasonably possible alibi.
>
> (4) The extent to which the Government assisted the defendant and his counsel in that reconstruction.
>
> (5) The strength of the prosecution's case. Most important here will be whether the Government's case is such as to negate all reasonable hypotheses of innocence. If there is any substantial possibility that the accused could, but for his

amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so.

(6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial.

*McIntosh*, 137 Wis. 2d at 349-50.

¶11 However, before the *McIntosh* framework applies, a defendant must show that "permanent amnesia has been medically established." *Id.* at 348. A defendant bears the burden of establishing his or her amnesia by a "clear preponderance of the credible evidence." *Muench v. State*, 60 Wis. 2d 386, 392-93, 210 N.W.2d 716 (1973), *overruled on other grounds by Schimmel v. State*, 84 Wis. 2d 287, 267 N.W.2d 271 (1978), *overruled by Steele v. State*, 97 Wis. 2d 72, 294 N.W.2d 2 (1980).

¶12 Here, at the *Machner* hearing, trial counsel testified he had no information that there was a medical condition that explained Hoffman's lack of memory. The court-appointed psychologist only acknowledged Hoffman's amnesia claims, but stated she had no way to verify them. Further, Hoffman's psychologist opined that his "report of problems with his memory, both historically and with regard to his actions on the evening of 12/26/2019, are not consistent with any known amnestic phenomena of which this writer is aware." Based on this evidence, the circuit court found "trial counsel's reliance on the two reports available to him and the lack of any medical condition explaining the memory loss was not unreasonable under the circumstances."

¶13 We conclude Hoffman did not demonstrate that his "amnesia ha[d] been medically established." *See McIntosh*, 137 Wis. 2d at 348. Without medically establishing his amnesia, Hoffman cannot raise a due process defense based on amnesia and his *McIntosh* defense lacks merit. Counsel's "failure to pursue a

meritless argument does not constitute deficient performance." ***State v. Sandoval***, 2009 WI App 61, ¶34, 318 Wis. 2d 126, 767 N.W.2d 291. Counsel was not ineffective.

¶14    In his reply brief, Hoffman argues "***McIntosh*** imposes no categorical requirement that the defendant's amnesia be 'medically established.'" We disagree. In ***McIntosh***, the defendant's amnesia was medically established and not disputed, which was why we engaged in the multifactor analysis outlined above to determine whether McIntosh received a fair trial. ***McIntosh***, 137 Wis. 2d at 348. In ***McIntosh***, we specifically noted "the concern expressed by some courts that the amnesia might be feigned is not present here." ***Id.*** at 346 n.1.

¶15    In contrast, the defendant in ***Muench*** failed to establish the fact of his amnesia. ***Muench***, 60 Wis. 2d at 392-93. Our supreme court concluded that the defendant was not deprived of due process because "[t]here [was] *no medical evidence* of anything else in the record, except the subjective statements of the defendant and the observations and hearsay testimony of his associate ... to indicate any loss of memory." ***Id.*** at 392 (emphasis added). The court explained that "[t]he claim of amnesia is one easily fabricated after the event by one seeking to avoid responsibility for his [or her] acts. For this reason alone it is an affirmative defense that must be established by the defendant by a clear preponderance of the credible evidence." ***Id.*** at 392-93. The court concluded that, in ***Muench***, it did not need to determine whether the defendant's amnesia prevented him from receiving a fair trial "because of our opinion that the defendant has not met his burden to establish that he suffered from amnesia." ***Id.*** at 393 n.2.

¶16    In any event, even if Hoffman's own testimony and the postconviction affidavits from his friends medically established his amnesia, we conclude trial

counsel was not ineffective. We first agree with the circuit court that Hoffman did not demonstrate "based on 'contemporaneous evidence'" that he would not have pled to the charge. At the *Machner* hearing, when asked if he would have gone to trial had counsel told him about a due process claim based on amnesia, Hoffman stated simply, "I definitely would have asked to go to trial. I would not have accepted that plea." The court characterized this statement as "because I say so" testimony.

¶17    In its written decision, the circuit court then contrasted Hoffman's statement against the contemporaneous evidence—"the history of conversations and events leading up to his plea." The court found that trial counsel and Hoffman reviewed discovery together and specifically discussed the evidence against Hoffman, "such as the 911 calls made contemporaneously to the shooting, the witnesses across the street, the photographic evidence, etc." They also discussed the psychologists' opinions, including that Hoffman was "without any medical support for his amnesia claim" and that neither opinion supported a NGI plea. Trial counsel testified he discussed with Hoffman the "pros and cons" of the case and explained that, "in the context of those discussions," Hoffman "came to a conclusion that it would be best to cut our losses and beg for mercy." The contemporaneous evidence does not establish that Hoffman, had he known about a *McIntosh* defense, would have taken the case to trial instead of entering a plea.

¶18    Second, we agree with the circuit court that there was no reasonable likelihood that a *McIntosh* defense would have succeeded at trial. Using the multifactor *McIntosh* analysis, the court first found that Hoffman had the ability to consult with and assist his attorney. It noted that nothing suggested Hoffman was unable to provide information leading up to the criminal events, review discovery, assist in the reconstruction of the case, and communicate effectively with his

attorney. The court also found the evidence against Hoffman was "considerably strong, both in quality and in quantity of the evidence." The State had eye witness testimony from S.R., multiple independent eye witnesses who observed the events from across the street; the text messages from Hoffman to S.R. stating he would kill Bickler; the contemporaneous 911 calls; and the fact that Bickler was shot multiple times in his own house along with his dog. Considering the *McIntosh* factors, nothing suggests that Hoffman's claims of amnesia would have prevented him from receiving a fair trial.

¶19 In the end, we conclude counsel was not ineffective, and the court did not err by denying Hoffman's plea withdrawal motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.